WILSON FLOORS COMPANY, APPELLANT, *v.* SCIOTA PARK, LTD., ET AL.; PITTSBURGH NATIONAL BANK, APPELLEE.

(No. 77-976—Decided June 28, 1978.)

452

454

*Messrs. Porter, Wright, Morris & Arthur, Mr. Michael P. Graney* and *Mr. Thomas R. Sant,* for appellant.

*Messrs. Knepper, White, Arter & Hadden, Mr. R. Douglas Wrightsel* and *Mr. Michael P. Mahoney,* for appellee.

SWEENEY, J.  The central issue in this cause is whether the bank's oral promise to Wilson that payments would be forthcoming upon a resumption of work at The Cliffs project constituted an enforceable oral contract.

R. C. 1335.05 provides:

"No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."

In paragraph one of the syllabus in *Crawford* v. *Edison* (1887), 45 Ohio St. 239, however, this court stated:

"When the leading object of the promisor is, not to answer for another, but to subserve some pecuniary or business purpose of his own, involving a benefit to himself, or damage to the other contracting party, his promise is not within the statute of frauds, although it may be in form a promise to pay the debt of another and its performance may incidentally have the effect of extinguishing that liability."

In applying the leading object rule to the facts in this cause, the Court of Common Pleas, finding that the bank assumed a "direct undertaking" when it guaranteed Wilson

payment for future services rendered, held that the bank's promise was enforceable by Wilson. No significance was given to the fact that Unit remained primarily liable for the debt owed Wilson; *i. e.*, that Wilson continued to send its progress billings to Unit for reimbursement.

The Court of Appeals, on the other hand, finding that the bank became only secondarily liable to Wilson when it guaranteed payment to the subcontractor, held that the bank's promise came within the provisions of the statute of frauds and therefore was unenforceable. The fact that the promise by the bank to guarantee payments was made to further the bank's own business interest was found not to be determinative of the cause.

In the first major case in Ohio concerning the proper application of the statute of frauds, this court held:

"A. let a contract to B. for furnished materials and building a house for a stipulated sum. B. employed C. to furnish materials and to perform the labor of plastering. When the building was completed, except a small part of the plastering, C., in the absence of B., informed A. that he would not finish the plastering unless A. would agree to pay him; and A. replied, 'Finish the plastering and I will see you paid.' The obligations of B. to complete the house and to pay C. not being released, *Held*, that the verbal promise of A. to see C. paid was within the statute of frauds." Paragraph one of the syllabus in *Birchell* v. *Neaster* (1881), 36 Ohio St. 331. Because B., the contractor, was not released from his obligation to pay C. for his work as a result of the oral promise by A., the court held that the promise was "collateral" and "conditional" and therefore unenforceable. In other words, before A.'s promise could be enforceable, C. would have to show that the promise constituted "* * * an agreement to make the old debt the debt of the promisor." *Birchell, supra*, at 337.

Subsequently, this court confronted a somewhat different set of circumstances in *Crawford, supra*. The court summed up the facts and holding of the case in paragraph two of the syllabus as follows:

"S. agreed with C. to furnish the material and build him a house for a specified amount. S. employed E. to put on the roof, eave-troughs and conductor pipes, for a stipulated sum, to be paid when the work should be completed. When E. had done about two-thirds of the work, S. abandoned the job and left the county, without having paid E., or provided for his payment. E. then informed C. that he would not do any more work, unless he was to be paid. Thereupon C. told E. to go on with his part of the work, and complete it, and he would pay him. E. accordingly completed his job, and charged the amount to C. *Held*, C.'s promise was not collateral, to answer for the debt of another, but was an original one, for his own benefit, and unaffected by the statute of frauds."

Although the law cited in *Crawford* supports the proposition that a promise may be "original" under the leading object rule even though the primary obligor is still liable on the debt, the court placed much reliance on the fact that the primary obligor in this case had left the county.

Thus, while adopting the leading object rule, the *Crawford* court was apparently employing the reasoning of the earlier Ohio case of *Birchell, supra,* wherein the court required as a condition precedent to the enforceability of the oral promise that it be shown that the agreement between the promisor and the creditor made the old debt the debt of the promisor.

In *Grant* v. *Kinney* (1927), 117 Ohio St. 362, the holder of a second mortagage on property secured by several promissory notes attempted to foreclose on the mortgaged property when payment on the notes became past due. The owner of the encumbered property, not having assumed payment of the notes when he purchased the property, attempted to convince the second mortgagees not to foreclose by verbally representing to them that if they would dismiss their suit, he would, *inter alia,* assume the balance of the mortgage indebtedness. The foreclosure suit was voluntarily dismissed. Later, when the property

owner refused to pay the amounts owed the second mortgagees, they foreclosed on the property and brought suit against the owner for the amount of money still owed them over and above the proceeds received from foreclosure.

The court, in determining whether the property owner's oral promise to the second mortgagees was enforceable, sought to discover whether the oral agreement was "collateral," in the sense that the promisor "only became the surety or guarantor of the mortgage debt," or "original," in the sense that the promisor made an "independent contract," *i. e.*, became primarily liable on the obligation. *Grant, supra,* at page 370.

Such an anlysis reflects with approval the approach taken in *Birchell.* However, the *Grant* court went on to cite paragraph one of the syllabus in *Crawford* to support the proposition that the owner's promise to pay the existing notes on the mortgage was enforceable since the promise was to subserve some business or pecuniary interest of the owner. Thus, it is not altogether clear whether the court, in finding that the oral promise was "original" and not "collateral," meant that the promise was "original" because the promisor became primarily liable by assuming the mortgage, or because the promise made was to subserve the business interest of the promisor, irrespective of whether the promisor became primarily liable on the mortgage notes.

The final case discussing application of the leading object rule is *Wolf* v. *Friedman* (1969), 20 Ohio St. 2d 49. In *Wolf,* the court was confronted with the issue of whether an oral promise made by a husband to an attorney to reimburse the attorney for legal services rendered his wife was enforceable. The court, finding that it was not alleged or proved that the leading object of the husband in making the promise was to serve his own business or pecuniary interest, held that the promise was unenforceable by the attorney as against the husband. The court held in paragraph one of the syllabus that this result obtained even though "* * * it may be alleged and proved that those

services were necessary for and beneficial to not only the wife but also the husband. (*Birchell* v. *Neaster*, 36 Ohio St. 331, approved and followed, *Crawford* v. *Edison*, 45 Ohio St. 239, distinguished.)'' Given the fact that the court had already found that it was fatal to the attorney's cause to fail to allege and prove facts supporting application of the leading object rule, it is not clear on what basis the court chose to distinguish the *Crawford* case.

Having set forth the above pronouncements of this court concerning the applicability of the statute of frauds, we find that the *Birchell* and *Crawford* holdings are not in conflict and that the verbal agreement *sub judice* does come within the leading object rule set forth in *Crawford,* despite the fact that the original debtor, Unit, had not abandoned the job site.

In discussing the leading object rule, the *Crawford* court cited with approval the holding of an early Michigan case. *Calkins* v. *Chandler* (1877), 36 Mich. 320, wherein it is stated at page 324:

''In many cases the test whether a promise is or is not within the statute of frauds is to be found in the fact that the original debtor does or does not remain liable on his undertaking; if he is discharged by a new arrangement made on sufficient consideration, with a third party, this third party may be held on his promise though not in writing; but if the original debtor remains liable and the promise of the third party is only collateral to his, it will in strictness be nothing more than a promise to answer for the other's debt. But where the third party is himself to receive the benefit for which his promise is exchanged, it is not usually material whether the original debtor remains liable or not.''*

The above explanation of the leading object rule indicates that, in a determination of whether an oral prom-

---

*This case is cited as authority in 1 Reed on the Statute of Frauds (1884), 96, Section 70, and remains the applicable law in Michigan. See *Cokely* v. *Kelly-Mitchell Const. Co.* (1971), 32 Mich. App. 689, 189 N. W. 2d 67.

ise is enforceable to pay the debt of another, the court may employ one of two tests. The court may inquire as to whether the promisor becomes primarily liable on the debt owed by another to a third party. This test was employed by the *Birchell* court. If it is found that the promisor does not become primarily liable for payment of the debt, the court may inquire as to whether the promisor's leading object was to subserve his own business or pecuniary interest. This latter test was incorporated into the syllabus of *Crawford*.

Thus, the *Birchell* and *Crawford* holdings are not in conflict, but are simply different approaches taken by the court to determine whether a verbal agreement is enforceable. This observation was acknowledged by the *Crawford* court itself in the last paragraph of its opinion wherein it states at page 248:

"*Birchell* v. *Neaster,* 36 Ohio St. 331, is cited by counsel for plaintiffs in error, as an authority, sustaining their claim, that the defendant's promise is within the statute. But in all that classifies that case among collateral and conditional promises, and distinguishes it from original and unconditional ones, it bears no analogy to the case under discussion."

Because it is unquestioned that the bank in the instant cause did not become primarily liable when it guaranteed the subcontractors that they would be paid, the court must apply the second test set forth in *Crawford* to determine the enforceability of the verbal agreement.

Under the second test, it is of no consequence that when such promise is made, the original obligor remains primarily liable or that the third party continues to look to the original obligor for payment. So long as the promisor undertakes to pay the subcontractor whatever his services are worth irrespective of what he may owe the general contractor, and so long as the main purpose of the promisor is to further his own business or pecuniary interest, the promise is enforceable. See 3 Williston on Contracts (3 Ed. 1960), 466-467, Section 481. Thus, under

this test it is not required to show as a condition precedent for enforceability of the oral contract that the original debt is extinguished.

In accord with this interpretation of the leading object rule are *Kampman* v. *Pittsburgh Contracting & Engineering Co.* (1934), 316 Pa. 502, 175 A. 396; Restatement of Contracts 2d 432, Section 184 (Tent. Draft Nos. 1-7, 1973); 2 Corbin on Contracts, 285-292, Section 369.

The facts in the instant cause reflect that the bank made its guarantee to Wilson to subserve its own business interest of reducing costs to complete the project. Clearly, the bank induced Wilson to remain on the job and rely on its credit for future payments. To apply the statute of frauds and hold that the bank had no contractual duty to Wilson despite its oral guarantees would not prevent the wrong which the statute's enactment was to prevent, but would in reality effectuate a wrong. See *Davis* v. *Patrick* (1891), 141 U. S. 479, 487-490.

Therefore, this court affirms the finding of the Court of Common Pleas that the verbal agreement made by the bank is enforceable by Wilson, and reverses the judgment of the Court of Appeals.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, CELEBREZZE, W. BROWN, P. BROWN and LOCHER, JJ., concur.