BUILDER APPLIANCE SUPPLY, INC., APPELLEE, *v.* HUGHES, APPELLANT, ET AL.

(No. 82AP-545—Decided December 6, 1983.)

Messrs. Emens, Hurd, Kegler & Ritter and Mr. John P. Brody, for appellee.

Messrs. Bricker & Eckler, Mr. James J. Hughes, Jr., and Ms. Penny A. Proctor, for appellant.

MOYER, J. This case is before us on

the appeal of defendant-appellant, Michael G. Hughes, from a judgment of the Franklin County Municipal Court awarding plaintiff-appellee, Builder Appliance Supply, Inc., $4,038.94 on accounts due from defendant Georgetown Homes, Inc. (hereinafter "Georgetown") and $4,520.61 on accounts due from defendant Hughes.

Plaintiff is a wholesale distributor of major appliances and Georgetown was a construction and remodeling company which bought appliances from plaintiff. In March 1980, plaintiff stopped selling appliances to Georgetown on credit because Georgetown had an unpaid balance due of $720.71. Georgetown thereafter purchased appliances from plaintiff on a C.O.D. basis.

In the fall of 1981, Hughes, Georgetown's president, called Douglas T. Sickmeier, plaintiff's credit manager, to discuss future payment arrangements. Sickmeier testified that Hughes inquired about re-establishing Georgetown's credit account with plaintiff and that Hughes assured Sickmeier that since future appliances would be delivered to properties owned by Hughes and members of his family and to properties for which Georgetown had found buyers, plaintiff could be assured that it would be paid.

The balance due on the invoices (Exhibits 5-13) for most of the deliveries made following this conversation is $3,799.90. These invoices were sent to Georgetown rather than to Hughes personally, but plaintiff claims, and the trial court found, that when Hughes assured plaintiff that it would be paid for these appliances, Hughes became personally liable for these amounts. Hughes admitted that he and his wife owned fifty percent of one of the properties to which appliances were delivered, that his brother was part owner of another of the properties, and that a third property was owned by his mother.

Three additional invoices for appliances delivered by plaintiff in September 1981 show a total unpaid balance of $4,038.94. Plaintiff claimed, and the trial court found, that Georgetown was liable to plaintiff for that amount.

Hughes raises the following three assignments of error in support of his appeal from the trial court's judgment finding him personally liable on some of the accounts:

"1. The trial court erred in finding Hughes personally liable for debts of the corporation incurred prior to the conversation in question.

"2. The trial court erred in finding the conversation in question created a contract between Hughes as an individual and Builder Appliance Supply.

"3. The trial court erred in failing to find an oral promise by Hughes to pay the debts of the corporation unenforceable under the Statute of Frauds."

Hughes' assignments of error are interrelated and will be considered together. The trial court's oral findings that Hughes told Sickmeier that he could be assured of payment and that Hughes' statement constituted an oral promise to pay for appliances delivered after the conversation are supported by the record. Sickmeier believed that since Hughes mentioned his personal interest in the properties, Hughes was personally assuring payment for the appliances. As the trial court noted, Hughes did not testify that he did not tell Sickmeier that he could be assured of payment due to Hughes' personal interest in the properties. Hughes merely testified that he could not recall what he told Sickmeier. Sickmeier's testimony regarding Hughes' assurances thus stands uncontroverted and supports the trial court's finding that an oral contract existed between Hughes, personally, and plaintiff.

Hughes claims that, even if he made an oral promise to pay for future deliveries, his promise is unenforceable under the Statute of Frauds because it is a promise to answer for Georgetown's debt. The Statute of Frauds provides, in part, as follows:

"No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized." R.C. 1335.05.

The statute's commendable purpose is:

"* * * to secure the highest and most satisfactory species of evidence [i.e., a writing,] in cases where parties, without apparent benefit to themselves, enter into stipulations of suretyship; and where there would be great temptation, on the part of creditors, in danger of losing their debts by the insolvency of their debtors, to support suits by means of false evidence, by coloring conversations and exaggerating words of commendation or expressions of encouragement into positive contracts. * * *" *Crawford* v. *Edison* (1887), 45 Ohio St. 239, 245.

Thus, when the promise is not a promise to answer for the debt of another, or when the promisor may expect to derive a benefit from his promise, the rationale behind the statute requiring a writing ceases to exist. As the Ohio Supreme Court explained, a court may employ either of these two tests in determining whether the action is barred by R.C. 1335.05: it may consider whether the promisor's promise is original and the promisor becomes primarily liable for the debt; and, if the promise is a collateral promise, the court may consider whether the promisor's leading object in making the promise was to promote his own interests. *Wilson Floors Co.* v. *Sciota Park, Ltd.* (1978), 54 Ohio St. 2d 451, 458-459 [8 O.O.3d 444]. In *Wilson Floors Co.*, the court held that a bank that held mortgages as security for its construction loans on a real estate project was liable on its oral promise to a subcontractor (Wilson Floors Co.) that it would be paid if it returned to work when the general contractor became delinquent in its payments to the subcontractor. The court found the bank's promise was made to save the bank the higher costs of foreclosing on its mortgage and hiring a new contractor.

Applying the first test to the facts of this case, we conclude that Hughes' promise to plaintiff was collateral to Georgetown's obligation to plaintiff. The record does not indicate that plaintiff intended to release Georgetown from any obligation on its accounts. Rather, plaintiff continued sending the invoices to Georgetown rather than to Hughes personally; and, when plaintiff called Hughes to inquire about past due payments, plaintiff asked Hughes to check with his brother to ascertain whether plaintiff could be paid.

As the Ohio Supreme Court noted in the leading case applying this first test, the line between promises which are original and intended to make an old debt the debt of a new promisor and those which are collateral and constitute promises to pay if the other does not is difficult to trace. *Birchell* v. *Neaster* (1881), 36 Ohio St. 331, 336-337.

However, when the new promisor " '* * * is himself to receive the benefit for which his promise is exchanged, it is not usually material whether the original debtor remains liable or not.' " *Wilson Floors Co.* v. *Sciota Park, Ltd., supra,* at 458, quoting *Calkins* v. *Chandler* (1877), 36 Mich. 320, 324-325.

Thus, we must also apply the second test to the facts of this case to determine whether Hughes' oral promise is unenforceable due to the Statute of Frauds.

"When the leading object of the promisor is not to answer for another's debt but to subserve some pecuniary or business purpose of his own involving a benefit to himself, his promise is not within the statute of frauds, although the original debtor may remain liable." *Wilson Floors Co.* v. *Sciota Park, Ltd., supra,* syllabus.

The only remaining issue is whether

the leading object or main purpose of Hughes' promise was to promote his own interests or the interests of Georgetown. *Crawford* v. *Edison, supra,* at 246; *Beaver* v. *Isaly* (Sept. 18, 1980), Franklin App. No. 80AP-220, unreported.

This court held, in *Beaver* v. *Isaly, supra,* that summary judgment for the defendant-promisor was improperly granted on the following facts. Defendant was the president, chief executive officer, a director, and a twenty-six percent shareholder of a bank which had made construction loans to a defaulting company. Defendant was also a director of a corporation which wished to acquire the bank and defendant had been primarily responsible for the bank making the loan to the defaulting company. When a new company was formed to complete the construction, defendant loaned the new company $30,000 and allegedly induced plaintiff to make further loans to the new company by promising to repay plaintiff if the company defaulted. This court held that a jury question was presented regarding whether defendant's leading object in guaranteeing plaintiff's loan was to promote defendant's own interests or the interests of the bank or the new company.

In *Beaver,* we cited two cases in which the promisor's relationship to the corporation whose debt was being guaranteed was held to be determinative of the issue. In *Texas Co.* v. *Seaboard Natl. Bank* (1926), 26 Ohio App. 104, the promisor guaranteed debts of the company of which he was president and a principal stockholder. The court held he had directly benefited from the promise and his estate was therefore liable to the creditors.

In *Stuart Studio, Inc.* v. *Natl. School of Heavy Equip., Inc.* (1975), 25 N.C. App. 544, 214 S.E. 2d 192, the court held that a jury question was presented where the promisor of the corporate debt was the founder, chairman of the board, owner of one hundred percent of the Class A voting stock and forty-nine percent of the Class B stock, and received a monthly salary.

Although *Beaver* and *Stuart Studio, Inc.* did not decide the merits of the "leading object" issue, they are helpful in demonstrating the factors courts have considered in their efforts to develop a consistent rule.

In the present case, the following facts support the conclusion that Hughes' leading object was to promote his own interests: he is the president of Georgetown, he is Georgetown's statutory agent, he testified that Georgetown owed him $75,000 to $100,000, and Georgetown's address and his address are the same.

However, we are unable to conclude that these facts are enough to demonstrate that Hughes guaranteed Georgetown's promise in order to subserve or promote his own interest. There is no evidence that Hughes owns any part of Georgetown Homes, Inc. or that Hughes is even paid a salary for being president of Georgetown. Although we presume that he received a salary from Georgetown, the presumption is insufficient, without evidence of ownership of the company or of the amount of his salary, to support an inference that Hughes had a personal interest in assuring that credit was extended to Georgetown to keep Georgetown in business.

Likewise, although Hughes testified that Georgetown owed him money, there is no evidence of the terms of the loan which would support an inference that plaintiff's extension of credit to Georgetown increased the likelihood that Hughes' loan would be repaid.

The trial court erred in finding that the evidence introduced supported plaintiff's assertion that Hughes' leading object or main purpose in making the promise was to promote his own interests rather than the interests of Georgetown.

Turning to the specific invoices upon which plaintiff bases its cause of action, the first four invoices (Exhibits 1-4), upon which there remains a total unpaid balance of $720.71, are for appliances ordered by, and delivered to, Georgetown

prior to Hughes' conversation with Sickmeier. There is no evidence in the record indicating that Hughes agreed to assume Georgetown's pre-existing debts to plaintiff. Even Sickmeier testified that plaintiff was assured it would be paid for future deliveries since Hughes and his family owned some of the rental properties in which future appliances would be installed and since a sale was pending on at least one of the other properties. Hughes' first assignment of error is therefore sustained.

Exhibits 5 — 13 are invoices for appliances delivered following Hughes' conversation with Sickmeier and are the invoices for which the trial court found Hughes to be personally liable. Exhibit 9 is not at issue in this appeal.

Exhibits 5 and 7 are invoices for two ranges and two refrigerators delivered to rental properties in which Hughes and his wife hold a fifty percent ownership interest. In his brief, Hughes concedes his liability for the amount owed on these two invoices, which is $1,277.52. Since Hughes is a part owner of the properties in which these appliances were installed, Hughes' promise to pay for these appliances is outside the Statute of Frauds since the trial court could have found from the evidence presented that Hughes promised to pay for these appliances to promote his own personal interest.

The remaining invoices for which the trial court found Hughes personally liable, Exhibits 6, 8, 10, 11, 12 and 13, were for appliances delivered to properties in which Hughes had no personal interest. Since, as discussed *supra,* plaintiff failed to prove that Hughes' interest in Georgetown indicated that the leading object of his promise to plaintiff was to promote his own interests and since there is no evidence that Hughes had any interest in the properties or would derive any benefit from the appliances delivered to them on credit, Hughes' promise to pay these invoices is unenforceable due to the Statute of Frauds.

The trial court found that George-town Homes, Inc. alone was liable for the invoices labeled as Exhibits 14, 15 and 16; thus, the invoices are not at issue in this appeal.

Hughes' second and third assignments of error are sustained, except as to the amounts invoiced for appliances delivered to properties in which he has a personal ownership interest.

For the foregoing reasons, to the extent that the trial court's judgment orders Hughes to pay plaintiff $1,277.52, the judgment is affirmed; to the extent it orders him to pay plaintiff the invoiced amounts shown on Exhibits 1, 2, 3, 4, 6, 8, 10, 11, 12 and 13, the judgment is reversed with instructions to enter judgment for defendant Hughes.

*Judgment affirmed in part and reversed in part.*

WHITESIDE, P.J., and NORRIS, J., concur.