SEBALY, SHILLITO & DYER, Appellee,

v.

BAKERS EQUIPMENT/WHOLESALERS, INC.;

Stoller, Appellant.

[Cite as *Sebaly, Shillito & Dyer v. Bakers Equip./Wholesalers, Inc.* (1991), 73 Ohio App.3d 491.]

Court of Appeals of Ohio,
Shelby County.

No. 17–90–5.

Decided May 7, 1991.

*Thomas Barnhart II*, for appellee.

*Norman P. Smith*, for appellant.

SHAW, Judge.

This is an appeal from a judgment rendered in the Court of Common Pleas of Shelby County in favor of the plaintiff-appellee, Sebaly, Shillito & Dyer, upon its complaint for unpaid legal fees and costs incurred in the appellee's legal representation of Bakers Equipment/Wholesalers, Inc. ("BE/W").

BE/W is a New York corporation with its principal place of business located in Bergen, New Jersey. Defendant-appellant, Eugene Stoller, owns one hundred percent of the voting stock of BE/W and is also the president and chief executive officer of the company. In June 1986, appellee law firm was retained by BE/W to investigate contemplated legal action against certain individuals arising out of an alleged illegal conspiracy to appropriate the business of and compete against the Mixer Division of BE/W located in Sidney, Ohio. The agreement between appellee and BE/W was never reduced to writing.

In July 1986 the suit alleging unfair competition (the *Shaffer* case) was filed. Appellee represented BE/W from the initial investigation of the matter through the eventual settlement and dismissal of the case, which included the sale of the Mixer Division to the defendants in the *Shaffer* case.

The complaint in this matter contains three claims for relief. In the first and second counts, appellee demands judgment against BE/W, alleging that appellee rendered services to BE/W in connection with the unfair competition suit for which BE/W failed to pay. In the third count of the complaint,

appellee demands judgment against Stoller individually, alleging that, after the initial retainer paid by BE/W had expired, Stoller stated that he would personally pay for any legal services and/or would guarantee payment by BE/W.

Initially, both BE/W and Stoller failed to file answers to the complaint. Consequently, default judgments were entered as to each defendant. Subsequently, Stoller's individual motion to vacate the default judgment against him was sustained by the trial court. However, BE/W did not move to vacate the default judgment as applicable to the corporation. Therefore, the first and second counts of the complaint were not at issue during the trial.

The issues raised by the allegations of the third count of the complaint were tried in a trial to the court, whereupon the trial court concluded that Stoller had personally guaranteed payment of all attorney fees incurred on behalf of BE/W. The trial court further concluded that Stoller's personal guarantee was not barred by the statute of frauds. The trial court therefore entered judgment awarding appellee the sum of $35,369.93, plus prejudgment interest of $10,250.08 and postjudgment interest at the rate of ten percent.

Appellant, Eugene Stoller, assigns one error to the judgment of the trial court, asserting three reasons why the judgment is erroneous. We will consider these arguments seriatim.

The first argument advanced by Stoller is that there was no evidence that Stoller personally guaranteed the past obligations of BE/W. Specifically, it is Stoller's contention that if a personal guarantee was made, it was limited to payment for future fees and costs, for which payment was made. In addition, Stoller contends that, in any event, there was no consideration for his alleged personal guarantee to pay BE/W's debt.

The trial court's finding that Stoller personally guaranteed payment of all attorney fees and costs in this matter is supported by the record. The evidence establishes that in March 1987, the balance due appellee was $42,-544.41. The uncontroverted testimony of James Dyer, the partner in the law firm who had the primary responsibility for litigating the *Shaffer* case, reflects that throughout appellee's representation of BE/W, Stoller had, without specifically making any personal commitment, given Dyer repeated assurances that the firm would be paid the delinquent fees and costs which had accrued. However, Dyer testified that, given the insolvent condition of BE/W, he understood Stoller's assurances of payment to have been a personal commitment.

As the case approached settlement, other members of the firm expressed their misgivings about proceeding with the extensive settlement negotiations

without Stoller's personal guarantee for payment of legal fees and costs. To this end, in March 1987, Dyer telephoned Stoller and advised him that Stoller's personal commitment with respect to the account would be a prerequisite to the appellee's continued representation in the settlement negotiations.

In the course of the March 1987 telephone conversation with Dyer, Stoller agreed to pay the legal fees incurred by BE/W. Appellee continued in its representation of BE/W throughout the settlement negotiations and sale of the business. Additional legal services and expenses incurred after the March conversation were $9,650.66. In May 1987, BE/W paid appellee $16,115.

■ Dyer's testimony regarding Stoller's assurances of payment stands uncontroverted and supports the trial court's finding that an oral contract existed between appellee and Stoller, personally, for past and future legal fees and costs. Furthermore, we conclude that appellee's forbearance, from withdrawing from its representation of BE/W, was adequate consideration to support Stoller's promise of personal guarantee.

Stoller next argues that even if he made an oral promise to pay the legal fees and costs, his promise is unenforceable under the statute of frauds because it is a promise to answer for BE/W's debt. R.C. 1335.05 provides, in part, as follows:

"No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."

The syllabus of *Wilson Floors Co. v. Sciota Park, Ltd.* (1978), 54 Ohio St.2d 451, 8 O.O.3d 444, 377 N.E.2d 514, reads as follows:

"When the leading object of the promisor is not to answer for another's debt but to subserve some pecuniary or business purpose of his own involving a benefit to himself, his promise is not within the statute of frauds, although the original debtor may remain liable."

■ Factors to be considered in applying the leading object rule to an oral promise of a person to pay for the debt of a corporation are: "(1) whether the promisor holds an office in the corporation; (2) whether the corporation owes the promisor any money; (3) whether the promisor receives a salary from the corporation; and (4) whether the promisor has an ownership interest in the corporation." *Builder Appliance Supply, Inc. v. Hughes* (1983), 13 Ohio App.3d 207, 13 OBR 256, 468 N.E.2d 758. In addition, it has been held that: "An oral promise to pay the debt of a corporation, by one who owns

substantially all the stock in that corporation, is not within the statute of frauds." *Hughes v. Miner* (1984), 15 Ohio App.3d 141, 15 OBR 233, 473 N.E.2d 53.

■ Considering the cited authorities, we conclude that the evidence supports the trial court's finding that Stoller's oral promise was outside the statute of frauds. The record demonstrates that (1) Stoller was an officer of BE/W, (2) the corporation owed Stoller substantial sums of money, (3) Stoller was employed by the corporation, and (4) Stoller was the sole shareholder.

Moreover, the evidence reflects that the proceeds gained from appellee's settlement of the *Shaffer* case and sale of BE/W were assigned to creditor financial institutions for which debts Stoller was personally liable. Thus, the leading object of Stoller's promise to pay the legal fees, as a condition of appellee's continued representation throughout the settlement negotiations, in fact, furthered Stoller's pecuniary interest.

■ Stoller's final argument is that the trial court erred in awarding prejudgment interest in that the claim for legal fees and costs was disputed and unliquidated.

"The general rule in Ohio * * * holds that a party's entitlement to prejudgment interest must turn, in major part, upon a determination as to whether the underlying debt is liquidated; if the amount of a debt is clear and certain, the prevailing party is generally entitled to interest from the date the sum became due and owing, and this remains true when the only question raised at trial concerns the party to whom the debt is properly chargeable. [Citations omitted.] A mere denial that one is liable for a debt that is otherwise clear and ascertainable is not sufficient to defeat a claim for prejudgment interest." *Nursing Staff of Cincinnati, Inc. v. Sherman* (1984), 13 Ohio App.3d 328, 330, 13 OBR 406, 408, 469 N.E.2d 1031, 1034.

In the instant case, the record demonstrates that in addition to representing BE/W in the *Shaffer* case, appellee also represented the corporation in two other less significant collection proceedings. The undisputed testimony of James Dyer establishes that Stoller knew the hourly rate applicable to each attorney who would potentially work on the BE/W account. The amount due and owing on BE/W's account for all legal services rendered by appellee was fixed in itemized monthly billings that reflected the service rendered as well as the time expended.

Despite Stoller's assertion that the prerequisite of a liquidated claim is negated by two instances of erroneous billing of fees and costs in the *Shaffer* litigation to the other BE/W cases, we find that the debt was capable of easy ascertainment by the computation of the hourly rate and the hours expended.

Therefore, the trial court did not err in awarding appellee prejudgment interest. For the reasons stated the single assertion of error is not well taken.

Finding no error as assigned or argued, the judgment of the trial court is affirmed.

*Judgment affirmed.*

THOMAS F. BRYANT, P.J., and EVANS, J., concur.