**In re Mark PI, Jr., Debtor.**

**Bankruptcy No. 97–59793.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Oct. 1, 1999.

Larry J. McClatchey, Kegler Brown Hill & Ritter, Columbus, OH, for debtor.

Kenneth M. Richards, Luper, Sheriff & Neidenthal, Columbus, OH, for trustee.

Marvin A. Robon, Gregory R. Elder, Marshall W. Guerin, Toledo, OH, for creditor.

Alexander G. Barkan, Columbus, OH, Assistant United States Trustee.

## MEMORANDUM OPINION AND ORDER

CHARLES M. CALDWELL, Bankruptcy Judge.

This case is before the Court on the objection of the trustee, William B. Logan, Jr. ("Trustee"), to a proof of claim filed by the law firm of Barkan & Robon ("B & R") in the amount of $92,954.87. B & R's claim was incurred through its provision of legal services to: Mark Pi, Jr. ("Debtor"); the Debtor's father, Mark Pi, Sr.; the Debtor's mother, Lily Pi; as well as Cor-

nerstone Foods, Inc., and JKMO Company, Inc. ("Corporations"). The Court finds that while B & R has failed to produce evidence sufficient to prove that the Debtor, in writing, personally guaranteed the payment of fees owed to B & R for legal services rendered to the Debtor, his family and the Corporations, B & R has proved the Debtor orally promised to pay those fees. The Debtor's oral promise to pay fees incurred by the Corporations can be enforced pursuant to the Leading Object Rule. The Debtor's oral promise to pay legal fees incurred by his parents can be enforced through the doctrine of Promissory Estoppel. Based upon these findings, the Court concludes that B & R's claim should be allowed in the amount of $92,954.87. A brief summary of the relationship between the parties will illustrate the bases for the Court's decision.

This case was commenced on October 22, 1997, and the Trustee was appointed on October 28, 1997. The Debtor scheduled B & R as a general, unsecured creditor in the amount of $94,000.00, and listed Mark Pi, Sr., Lily Pi, and Cornerstone Foods, Inc. as co-debtors. The Court issued a notice ordering creditors to file proofs of claims on or before March 16, 1998; however, B & R filed its unsecured proof of claim on March 23, 1998—seven days late. Because of this tardy filing, B & R is only entitled to distribution after payment of timely claims. 11 U.S.C. § 726(a).[1] Attached to B & R's proof of claim was a statement itemizing payments received by B & R and credited toward the "Pi–Cornerstone" account. On April 7, 1999, the Trustee filed his objection to B & R's proof of claim, and a hearing was held on June 29, 1999. Both litigants filed post-hearing memoranda.

B & R began providing legal services to the Pi family, as well as to the Corporations, in 1993. As the Corporations' financial difficulties and legal bills mounted, B

& R sought assurance that its fees would be paid, and in 1995, the Debtor, Mark Pi, Sr., and Lily Pi signed a document captioned "Acknowledgment and Consent" ("Acknowledgment"). B & R asserted that the Acknowledgment constituted a personal guarantee on the part of each of the signatories that B & R's fees would be paid. B & R could not locate the original, executed Acknowledgment or a copy. Instead, a copy of an unsigned acknowledgment drafted for signature by the Debtor, Mark Pi, Sr., Lily Pi, and the President of Cornerstone Foods, Inc. was presented. B & R asserted that the text of this copy is identical to the Acknowledgment the Debtor signed, and the Debtor testified he recalled signing it. Marvin Robon, B & R's managing partner ("Mr. Robon"), testified that no security agreement or financing statement was executed or recorded to support the Acknowledgment, because the Debtor did not have any assets. B & R also asserted that additional steps were taken to guarantee payment of its legal fees. Mr. Robon testified the Debtor executed a "note and/or a guarantee," but could not locate a copy.

The Court received into evidence a copy of a letter from the Debtor, on personal stationery, to Mr. Robon dated February 28, 1995 ("letter"), in which the Debtor refers to an enclosed, signed, original "Note and Future Advance Agreement to Pay Legal Fees" and a "Security Agreement." The letter does not indicate whether the enclosed documents were signed by the Debtor or by some other person; nor does the letter indicate the capacity in which the enclosed documents may have been signed. The Debtor testified he remembered signing a document other than the Acknowledgment, but could only recall that it was "some type of guarantee."

The Debtor testified he and his family understood B & R's need to be paid for the

---

**1.** Unless otherwise noted, all statutory citations will refer to Title 11 of the United States Code, aka the Bankruptcy Code.

significant services it had rendered, and would continue to render, for their benefit as well as for the benefit of the Corporations. The Debtor testified he believed the legal services rendered on behalf of the Corporations served his personal interests, as the services were intended to preserve the value of the Corporations that he would inherit. No testimony or evidence was presented, however, as to whether the Debtor's interests were served through the provision of legal services to Mark Pi, Sr. or Lily Pi.

■ A properly filed proof of claim constitutes *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr.P. 3001(f). A claim is deemed allowed as filed unless there is an objection. 11 U.S.C. § 502(a). The party objecting to a proof of claim bears the burden of presenting evidence sufficient to overcome the proof of claim's *prima facie* effect. *In re Eversole,* 1990 WL 349992, *3 (Bankr. S.D.Ohio Aug. 13, 1990); *Abboud v. Abboud (In re Abboud),* 232 B.R. 793, 796 (Bankr.N.D.Okla.1999). If the objecting party succeeds in demonstrating facts that tend to defeat the claim, the ultimate burden shifts to the claimant. *Abboud,* 232 B.R. at 796.

In support of his objection to B & R's proof of claim, the Trustee asserted the summary of payments received by B & R on the "Pi–Cornerstone" account, which was attached to B & R's proof of claim, was not sufficient to establish that the Debtor was obligated to pay the entire balance due, as not all of B & R's services were provided for the Debtor's individual benefit. The Trustee argued B & R had not demonstrated the Debtor made any promise, written or oral, to pay for work done on behalf of others. The Trustee asserted, absent evidence which established the existence of a written promise to pay debts owed by another, the Statute of Frauds controlled and required B & R's claim to be disallowed. The Trustee did not dispute that B & R performed the services, or that the Debtor should be liable for services provided for his individual benefit, so long as their value could be accurately determined.

In response to the Trustee's objection, B & R made three arguments. First, B & R argued the Acknowledgment the Debtor admitted executing constituted his written promise to pay debts jointly owed by himself, his parents and the Corporations, thus satisfying the Statute of Frauds. Second, B & R argued the Debtor executed other documents in which he personally guaranteed payment of all of B & R's legal fees. Although these documents could not be located, B & R asserted other evidence of their content was admissible and would establish the existence of the Debtor's guarantee. Third, B & R asserted the Debtor made oral promises in which he agreed to pay all of B & R's legal fees. B & R argued, while the Statute of Frauds normally requires a writing under such circumstances, the absence of written guarantees in this case was excused by the Leading Object Rule and the doctrine of Promissory Estoppel. In his reply, the Trustee argued the Acknowledgment did not constitute a guarantee of payment and, as B & R failed to produce a copy of any other written guarantees, the Statute of Frauds had not been satisfied. The Trustee also argued B & R had not established facts sufficient to successfully invoke the Leading Object Rule or the doctrine of Promissory Estoppel.

The Court concludes that because the Trustee does not dispute that the Debtor should be liable for payment of legal fees incurred on his individual behalf, B & R's proof of claim should be allowed, to that extent. The subsequent discussion will focus on whether the Debtor promised, orally or in writing, to pay legal fees incurred by his parents and the Corporations.

■ B & R first argued the Acknowledgment constitutes a guarantee on the part of the Debtor to pay all of B & R's legal fees. While the Court has consid-

ered the Acknowledgment in its entirety, its relevant provisions are as follows:

> ... This acknowledgment and representation is given to induce Barkan & Robon to continue to provide legal services to the undersigned, including their corporation, Cornerstone Foods, Inc.
>
> ...
>
> the undersigned parties who execute certain collateral documents in connection with granting a mortgage lien to Barkan & Robon do so of their voluntary free act and deed, and to assure Barkan & Robon of payment for their legal services already rendered and to be rendered in the future.

■ The Court concludes the Acknowledgment does not constitute the Debtor's written promise to pay all legal fees owed to B & R. The Acknowledgment merely refers to other "collateral documents" which, if executed, would have been intended to assure payment to B & R for services it rendered, and would continue to render, to the signatories. The Acknowledgment does not guarantee such documents would be executed. Whether the Debtor signed any other documents that can be construed as his personal promise to pay B & R's legal fees is a more difficult question. Although B & R has produced a copy of the letter from the Debtor to Mr. Robon, in which the Debtor refers to an enclosed, executed "Note and Future Advance Agreement to Pay Legal Fees" and a "Security Agreement," neither the originals nor copies of those documents have been produced.

Federal Rule of Evidence 1002 requires the submission of an original document to prove its content. Rule 1002 is modified by Rule 1004, which permits the admission of other evidence of the content of a document if the original is lost or destroyed. Here, the Court has received credible testimony from Mr. Robon as to the loss of the original "note and/or guarantee" or "security agreement" allegedly signed by the Debtor. Therefore, the Court is able to look to other evidence in attempting to determine the content of the alleged note/guarantee or security agreement.

The Court, however, has received no reliable evidence as to the substantive provisions of these documents. The Debtor's testimony affords little assistance, as he can only recall signing "some type of guarantee." The Debtor's letter does not state that it was he who signed these documents, nor does it detail their substance to the extent necessary to establish that the Debtor agreed to pay all legal fees owed to B & R for services rendered not only to himself, but to his parents and the Corporations. Further, the documents attached to B & R's memorandum in opposition to the Trustee's objection do not establish that the Debtor executed written promises to pay B & R's fees; they only serve to support B & R's assertion that significant services were provided (an assertion the Trustee has not challenged). B & R has not presented sufficient evidence that the content of the documents referred to in the letter constitutes a guarantee by the Debtor for payment of all of the legal fees owed to B & R.

■ The Court turns its attention to B & R's argument that the Debtor made enforceable, oral promises to pay for legal services rendered not only on his behalf, but on behalf of his parents and the Corporations. The Trustee did not seriously challenge the existence of such a promise, but instead argued the Leading Object Rule and/or the doctrine of Promissory Estoppel did not apply.

■ In *Wilson Floors Company v. Sciota Park Ltd.*, 54 Ohio St.2d 451, 459, 377 N.E.2d 514 (1978), the Ohio Supreme Court held that where a promisor's "leading object" in promising to pay debts owed by another was to serve his or her pecuniary interest, the promise will not be subject to the Statute of Frauds. The Leading Object Rule is applicable in cases in which the promise was to pay a debt owed by a corporation and individuals. *See, Wilson Floors*, 54 Ohio St.2d at 454, 377

N.E.2d 514; *Trans–Gear, Inc. v. Lichtenberger*, 128 Ohio App.3d 504, 508–510, 715 N.E.2d 608, 610–611 (11th Dist.1998). In determining whether there is intent to promote pecuniary interest by promising to pay a debt owed by a corporation, the Court should consider the following factors:

1. Whether the promisor holds an office in the corporation;
2. Whether the corporation owes the promisor any money;
3. Whether the promisor receives a salary from the corporation; and
4. Whether the promisor has an ownership interest in the corporation.

*Builder Appliance Supply, Inc. v. Hughes*, 13 Ohio App.3d 207, 210–211, 468 N.E.2d 758 (10th Dist.1983); *Hamer v. O'Leary*, 1991 WL 150925, * 2 (Ohio Ct.App. Aug. 8, 1991).

The Debtor was Secretary/Treasurer of each of the Corporations, and after Mark Pi, Sr. became ill late in 1994, the Debtor assumed control over the day-to-day operations of the Corporations. The Debtor testified he was owed approximately $600.00 by Cornerstone Foods, Inc., and JMKO Company, Inc. paid him a salary of approximately $2,000.00 per month. All of the Corporations' stock was held by Mark Pi International Holding Company, Inc., and all its stock was held by the Debtor's father, Mark Pi, Sr. The Debtor has never held an ownership interest in the Corporations, however, he testified he would inherit ownership of the Corporations from Mark Pi, Sr. as a matter of family and ethnic tradition.

Based upon these facts, the Court finds the Debtor's pecuniary interest was served by promising to pay for legal services rendered to the Corporations. The legal services were rendered for the purpose of preserving, and if possible increasing, the value of the Corporations. Had these efforts been successful, the Debtor would have reaped the benefits. The Debtor's promise to pay the debt for legal services owed by the Corporations is not controlled by the Statute of Frauds and is enforceable. B & R's proof of claim is allowed to the extent it consists of legal fees for services rendered to the Corporations.

■ B & R also argued the Debtor promised to pay for the legal services rendered to his parents. While the evidence supports the existence of such a promise, it will be unenforceable in accordance with the Statute of Frauds unless B & R is able to prove that the promise served the Debtor's pecuniary interest, invoking the Leading Object Rule. While the Debtor's testimony shows he felt a moral obligation to help his family, particularly during his father's illness, the Court received no evidence which proves that promising to pay his mother's and father's legal bills in any way served the Debtor's pecuniary interest. Because the Debtor's promise to pay his parents' legal fees was not reduced to writing, it is not enforceable.

■ The Court turns its attention to B & R's argument that the doctrine of Promissory Estoppel requires enforcement of the Debtor's promise to pay all of B & R's legal fees, including those owed by the Debtor's parents. Promissory Estoppel is an affirmative, equitable theory of recovery. *R. Renaissance, Inc. v. Rohm & Haas Company*, 674 F.Supp. 591, 595 (S.D.Ohio 1987). Where, as here with respect to the Debtor's parents' legal fees, the Statute of Frauds has defeated a claim based upon an oral promise, a claim raised under the doctrine of Promissory Estoppel may survive. *R. Renaissance*, 674 F.Supp. at 595; *Rogers*, 70 Ohio App.3d at 693–694, 591 N.E.2d 1332. The doctrine of Promissory Estoppel has three elements:

1. A clear and unambiguous promise;
2. Reasonable and justifiable reliance upon the promise; and
3. Detriment to the promisee, caused by his or her reliance on the promise.

*Nilavar v. Osborn*, 127 Ohio App.3d 1, 15, 711 N.E.2d 726 (2nd Dist.1998).

This Court has already found the evidence supported a finding that the Debtor made an oral promise to pay all of B & R's legal fees, including those incurred for the Corporations and the Debtor's parents. The Debtor's testimony shows this promise applied not only to legal services to be rendered in the future, but to prior services. The evidence is sufficient to justify a finding that B & R relied upon this promise in order to continue to provide legal services. The Court finds this reliance was reasonable, given the duration of the parties' professional relationship, and the fact substantial payments were made to B & R over the years. This reliance resulted in a detriment to B & R, which has performed substantial and unpaid work on behalf of the Debtor, his family and the Corporations. Mark Pi, Sr., Lily Pi and the Corporations also have filed petitions for relief under the Bankruptcy Code, and B & R apparently has received no distribution in those cases. Having found all of the elements of Promissory Estoppel satisfied by the evidence, the Court holds Promissory Estoppel warrants enforcement of the Debtor's promise to pay legal fees incurred by his parents. B & R's proof of claim is allowed to the extent it consists of such fees.

Accordingly, the Trustee's objection to the proof of claim filed by the law firm of Barkan & Robon is **OVERRULED.** Barkan & Robon's proof of claim is **ALLOWED** in the amount of $92,954.87, and shall be entitled to distribution as a tardy claim pursuant to section 726(a).

**IT IS SO ORDERED.**