Judgment reversed<br>and cause remanded.

FARMER and WISE, JJ., concur.

---

**Lind Stoneworks, Ltd., Appellee,**

**v.**

**Top Surface, Inc. et al., Appellants.**

[Cite as *Lind Stoneworks, Ltd. v. Top Surface, Inc.*, 194 Ohio App.3d 98, 2011-Ohio-2007.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–787.

Decided April 26, 2011.

Lewis J. DiRosario, for appellee.

Sammons & Associates Co., L.P.A., Christopher E. Grove, and Jeffery D. Sammons, for appellants.

SADLER, Judge.

{¶ 1} Defendants-appellants, Top Surface, Inc. and Randy L. Martindale, filed this appeal seeking reversal of a judgment by the Franklin County Court of Common Pleas in favor of plaintiff-appellee, Lind Stoneworks, Ltd. For the reasons that follow, we reverse.

{¶ 2} According to the complaint, appellee is an Ohio limited-liability company owned by James Lind. In 2007, Lind was approached by Martindale, owner of Top Surface, regarding fabrication of Zodiaq countertops. Top Surface had an agreement with Lowe's under which Lowe's took orders for the countertops, and Top Surface performed the installation. Lind and Top Surface ultimately entered into an oral agreement under which Lind fabricated the countertops for Top Surface. At trial, Lind testified that during the course of their discussions, "I asked Randy, 'Am I billing Lowe's or am I billing you?' And he said, 'You're billing me.'"

{¶ 3} At some point during this arrangement, Top Surface fell behind on payments made to Lind. Lind began to include on its invoices to Top Surface finance charges on any unpaid balances.

{¶ 4} Eventually, Lind filed suit on the unpaid balance. The complaint named both Top Surface and Martindale as defendants. The complaint did not identify whether Top Surface is a corporation or some other type of business entity, nor did the complaint identify the basis for any imposition of liability on Martindale in his individual capacity. The complaint alleged that the unpaid balance totaled $104,848.02.

{¶ 5} On June 21, 2010, the trial court held a bench trial on appellee's claims. At trial, appellee agreed that the balance alleged in the complaint had been reduced to $98,593.02 as a result of payments received from appellants. Appellants admitted that approximately $85,000 was owed on the account, but argued that the balance alleged by appellee should be adjusted to reflect additional payments made and to remove the finance charges that had been added.

{¶ 6} At trial, James Lind testified regarding the formation of the agreement. Exhibits were offered showing the amounts owed and payments received on the account. Those exhibits identify only Top Surface, and not Martindale individually, as the party on the account. Lind testified that he did not believe it was necessary to add Martindale's name on the account. Lind further testified that

when he started to include finance charges on his invoices to Top Surface, Martindale objected but continued to perform under the agreement. On cross-examination, when asked whether Martindale had ever agreed to guarantee Top Surface's debt, Lind testified that Martindale had repeatedly stated, "I will take care of it. Don't worry about it."

{¶ 7} Martindale testified that in entering the agreement with Lind, he was acting on behalf of Top Surface, with all payments being made from Top Surface's checking account. Martindale further testified that he did not personally guarantee the corporation's debt and did not believe he was a party to the agreement with Lind. Upon questioning by the trial court, Martindale testified that Top Surface is a corporation, with proper documents having been filed with the Ohio Secretary of State. Martindale also testified that he was the president and sole owner of the corporation and that the corporation had no other officers.

{¶ 8} A good portion of the trial involved the precise amount owed on the account. Martindale testified that he believed some payments had been made that were not properly credited to the account. The trial court asked the parties to submit memoranda setting forth their positions regarding the amount owed.

{¶ 9} Appellants submitted a memorandum arguing that the $98,593.02 amount offered at trial should be reduced by $10,362.32 reflecting finance charges added by appellee, and should additionally be reduced to reflect two checks appellants claimed had been sent to appellee, but not properly applied to the account, in the amounts of $3,948 and $1,550. Appellants also argued that they were entitled to a credit of $1,668.10, which reflected a service charge that had been charged to appellee by its supplier and passed on by appellee to appellants. Thus, appellants argued that the total owed was $81,064.58.

{¶ 10} Appellee filed a memorandum in response. Appellee agreed that appellants were entitled to an additional credit of $1,550. However, appellee argued that it was entitled to recover the $10,362.32 in finance charges and the $1,668.10 service charge. Appellee also argued that while it had received the check for $3,948, that check had not been cashed, at the request of Martindale's son. Thus, appellee argued that the total owed on the account was $97,043.02.

{¶ 11} The trial court issued a decision and entry finding in favor of appellee in the amount of $97,043.02. The court found that because the parties were merchants, the contract was governed by the Uniform Commercial Code. The court cited R.C. 1302.04(C)(2) and (3) to support the conclusion that the contract did not have to be in writing. The court further found that the $10,362.32 finance charge and the $1,668.10 service charge could be recovered pursuant to R.C. 1302.84 as incidental damages incurred by appellee as the seller.

{¶ 12} The court then turned to the issue of whether Martindale could be held individually liable on the contract and concluded that individual liability could be imposed. In reaching this conclusion, the court stated:

First, it must be pointed out that Defendant offered *no evidence* regarding the status of Top Surface, Inc. Apparently, Top Surface, Inc. operates out of Mr. Martindale's home at 9825 Meadowbrook Lane, Galena, OH 43021.

It was only upon the Court's questioning that Mr. Martindale admitted that he is the only owner of Top Surface, Inc. and that there are no other shareholders or owners. He further conceded that there are no officers, no board of directors, no shareholders, etc. Just himself! No evidence was produced regarding the status of the corporation with the Secretary of State or the I.R.S., etc. The checks used by Defendant to pay Plaintiff are signed by Randy Martindale without any indication that he is signing under any other capacity than personally. Mr. James E. Lind, Plaintiff, testified that this contract was personally made by and guaranteed by Randy L. Martindale, individually.

{¶ 13} The trial court therefore entered judgment in the amount of $97,043.02 against both Top Surface and Martindale. Appellants then filed this appeal, asserting four assignments of error:

### FIRST ASSIGNMENT OF ERROR

The Trial Court erred by finding that the corporate veil of Top Surface, Inc. should be pierced as to its contract with Lind Stoneworks, Inc. [sic] and that its shareholder, Randy L. Martindale, was liable for the contract.

### SECOND ASSIGNMENT OF ERROR

The Trial Court erred by finding that Lind Stoneworks, Ltd. and Randy L. Martindale entered into an enforceable contract for the sale of goods against the manifest weight of the evidence.

### THIRD ASSIGNMENT OF ERROR

The Trial Court erred by finding that Randy L. Martindale entered into an enforceable contract to personally guarantee the debt of Top Surface, Inc. to Lind Stoneworks, Ltd. against the manifest weight of the evidence.

### FOURTH ASSIGNMENT OF ERROR

The Trial Court erred by finding that Lind Stoneworks, Ltd. was entitled to interest on the unpaid balance of the contract at a rate in excess of that allowable under O.R.C. § 5703.47 against the manifest weight of the evidence.

{¶ 14} Appellants' first three assignments of error are interrelated and will therefore be addressed together. By those assignments, appellants argue that the trial court erred in imposing individual liability upon Martindale.[1]

{¶ 15} At the outset, it is unclear from the trial court's decision what the basis for imposition of individual liability was. In its decision, the trial court cited the lack of evidence regarding Top Surface's corporate status, e.g., documents filed with the Secretary of State or the Internal Revenue Service, and that Martindale signed checks for payment to appellee without indicating that he was signing them in his status as a corporate officer. These findings suggest that the trial court was concluding that Top Surface is not a valid corporation, which would lead to the conclusion that "Top Surface, Inc." was simply a "d.b.a." designation for Martindale personally, and he was therefore entering into the contract for himself individually.

{¶ 16} However, there is no basis in the record to support the conclusion that "Top Surface, Inc." was not a valid corporation, but was instead simply a name under which Martindale was conducting business for himself individually. In its complaint, appellee named Top Surface as a separate defendant, and nothing in the complaint appears to assert Top Surface's status as anything other than a corporation. Appellee did not argue at any point during the trial that Top Surface was not a corporation and that Martindale therefore had to have entered into the contract on his own behalf; the issue of Top Surface's corporate status was raised only during the presentation of appellants' case and only upon questioning by the trial court. The only testimony on this point was that offered by Martindale, who testified that Top Surface was a corporation, having properly filed documents with the Secretary of State.

{¶ 17} Furthermore, there is no evidence to support the trial court's conclusion that Martindale had signed checks for Top Surface without indicating that he was doing so in his corporate capacity. No checks were offered into evidence at trial showing that Martindale signed them in either his individual or corporate capacity. The only evidence offered at trial regarding checks was Martindale's testimony that all checks were drawn on Top Surface's checking account.

{¶ 18} The only other possible basis for a conclusion that Martindale was entering the contract on an individual basis rather than on behalf of the corporation was his response to the question about whether Lind would be sending invoices directly to Lowe's. Martindale responded, "You are billing me." This response by itself does not support a conclusion that Martindale was not

---

1. Nothing in appellants' assignments of error seeks to challenge the trial court's finding of liability against Top Surface as a corporation.

acting on behalf of the corporation in directing Lind regarding where invoices should be sent.

{¶ 19} Consequently, to the extent that the trial court's finding imposing individual liability on Martindale was based on a conclusion that Top Surface was not a valid corporation, there was no evidence in the record to support this conclusion.

{¶ 20} Also in its decision, the trial court pointed to its conclusion that Martindale was operating Top Surface out of his home and that Top Surface had no other shareholders or owners and no corporate officers. This language suggests that the trial court's imposition of individual liability on Martindale may have been based on a conclusion that it was appropriate to pierce Top Surface's corporate veil.

{¶ 21} In general, the shareholders, officers, and directors are not liable for a corporation's debts. *Capital–Plus, Inc. v. Potter* (June 5, 2001), 10th Dist. No. 00AP–1353, 2001 WL 604226. However, in some cases, the corporate veil can be pierced, and individual liability can be imposed. The elements that must be shown in order to pierce the corporate veil are (1) that the person against whom individual liability is sought to be imposed must have controlled the corporation so completely that the corporation had no separate mind, will, or existence of its own; (2) control over the corporation was exercised in such a manner as to commit fraud or an illegal act against the person seeking to impose individual liability; and (3) injury or unjust loss to the person seeking to impose individual liability resulted. *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 617 N.E.2d 1075. The party seeking to impose individual liability has the burden of establishing the elements necessary to pierce the corporate veil. *Zimmerman v. Eagle Mtge. Corp.* (1996), 110 Ohio App.3d 762, 675 N.E.2d 480.

{¶ 22} The trial court did not address any of the individual elements necessary to pierce the corporate veil. The only evidence cited by the trial court that would support piercing the corporate veil went only to the first element: that Martindale's exercise of control over Top Surface was so complete that Top Surface had no mind, will, or existence of its own. The fact that Top Surface had no officers, shareholders or owners other than Martindale arguably establishes a level of control complete enough to satisfy the first element required for piercing the corporate veil.

{¶ 23} We note that the other piece of evidence cited by the trial court, that Martindale was operating the corporation out of his home, does not necessarily lead to the conclusion that the corporation had no separate existence of its own. More importantly, there was no evidence in the record to support this conclusion.

The only basis for the trial court's conclusion appears to be that the complaint listed the same address for both Martindale and Top Surface. No evidence was offered to this effect at trial, and the only evidence admitted at trial regarding Top Surface's address, appellee's Exhibit A–1, shows Top Surface's address as 5064 Red Bank Road in Galena, an address different from that listed in the complaint for Top Surface.

{¶ 24} However, even assuming that the evidence at trial was sufficient to satisfy the first element for piercing the corporate veil, none of the evidence at trial provides any basis to conclude that Martindale exercised control over the corporation in a way that constituted fraud or an illegal act against appellee.

{¶ 25} Consequently, there was no basis for the trial court to impose individual liability on Martindale by piercing Top Surface's corporate veil.

{¶ 26} Finally, in its decision, the trial court cited testimony by James Lind that the oral contract between Top Surface and appellee had been personally guaranteed by Martindale. The full extent of Lind's testimony on this point was that upon being approached about the account's being delinquent, Martindale purportedly responded by saying, "I will take care of it. Don't worry about it."

{¶ 27} In order to create a guarantee on a debt, "the language must be clear that one is assuming responsibility." *Scherers Communications, Inc. v. Natl. Media Marketing, Inc.* (Apr. 14, 1994), 10th Dist. No. 93APE09–1254, 1994 WL 129912, *2. Martindale's statement that he would "take care" of the delinquent account was too ambiguous by itself to constitute a clear manifestation of his intention to establish a personal guarantee of payment sufficient to impose personal liability on Martindale.

{¶ 28} Furthermore, R.C. 1335.05, Ohio's Statute of Frauds, provides:

No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person; * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.

{¶ 29} Thus, in general, any promise to guarantee the debt of another party must be in writing signed by the guarantor. Ohio courts have recognized some instances in which a personal guarantee is not required to be in writing. " 'When the leading object of the promisor is not to answer for another's debt but to subserve some pecuniary or business purpose of his own involving a benefit to himself, his promise is not within the statute of frauds, although the original debtor may remain liable.' " *America's Floor Source, L.L.C. v. Joshua Homes,* 191 Ohio App.3d 493, 2010-Ohio-6296, 946 N.E.2d 799, ¶ 20, quoting *Wilson*

*Floors Co. v. Sciota Park, Ltd.* (1978), 54 Ohio St.2d 451, 8 O.O.3d 444, 377 N.E.2d 514, syllabus.

{¶ 30} Even if we were to assume that Martindale's oral statement to Lind that he would "take care" of the delinquency did constitute a sufficiently certain promise to guarantee Top Surface's debt, the lack of a writing reflecting the agreement would render the promise unenforceable. No evidence was offered at trial to the effect that Martindale's agreement to guarantee Top Surface's debt would have subserved some pecuniary or business purpose of Martindale's own or would have benefited him individually.

{¶ 31} Consequently, there was no basis for the trial court to impose liability on Martindale personally. Therefore, appellants' first three assignments of error are sustained.

{¶ 32} In their fourth assignment of error, appellants argue that the trial court erred in awarding appellee interest in an amount greater than the statutory amount set forth in R.C. 5703.47 on the balance of the account. By this assignment, appellants take issue with the trial court's inclusion of the approximately $10,000 in finance charges that were added to the account balance during the course of the agreement. The trial court found that the finance charges were commercially reasonable and therefore included them in the damage award.

{¶ 33} R.C. 1343.03(A) provides:

In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.

{¶ 34} In this case, the agreement between Top Surface and appellee was an oral contract. Thus, in the absence of a written agreement including a different interest rate, appellee was entitled only to interest at the rate set forth in R.C. 5703.47.

{¶ 35} Appellee argues that appellants acquiesced to the finance charges added to the invoices by continuing to do business under the contract. However, the Supreme Court of Ohio has concluded that inclusion of an interest rate higher than the statutory amount on an invoice does not satisfy the "written contract" requirement set forth in R.C. 1343.03(A), regardless of whether the recipient of

the invoice acceded to the interest rate set forth in the invoice. *Minster Farmers Coop. Exchange Co., Inc. v. Meyer*, 117 Ohio St.3d 459, 2008-Ohio-1259, 884 N.E.2d 1056.

{¶ 36} Appellee was entitled to an award of prejudgment interest at the statutory rate set forth in R.C. 5703.47 because "[p]rejudgment interest is seemingly automatic in cases of breach of contract." *O'Nesti v. DeBartolo Realty Corp.*, 163 Ohio App.3d 609, 2005-Ohio-5056, 839 N.E.2d 943, ¶ 110. However, at trial, no evidence was offered regarding how appellee determined the interest rate it applied when it added the finance charges to the invoices submitted to appellants. In briefing, appellee states that the interest rate was 18 percent. Because the trial court did not apply the statutory interest rate set forth in R.C. 5703.47, we must remand this case to the trial court for application of the proper rate.

{¶ 37} As a final matter, $1,668.10 of the finance charges included in the trial court's award of damages were attributed by the court to finance charges imposed on appellee by one of its suppliers as a result of Top Surface's failure to pay all amounts owed on the account. Incidental damages incurred as a result of a breach of contract can include interest charges incurred on money borrowed by the seller to finance the subject matter of the contract. See *Baker v. Dupler* (Dec. 16, 1991), 4th Dist. No. 1481, 1991 WL 271349.

{¶ 38} No evidence was offered at trial that the $1,668.10 charge was incurred by appellee on money used by appellee to finance the subject matter of the contract between appellee and Top Surface. In the brief regarding the amount of damages submitted after the trial, appellee stated that the charge was imposed by one of appellee's suppliers, but did not connect the supplier to materials used in the contract between appellee and Top Surface. Furthermore, even if the connection had been made, appellee offered only the bare assertion made in its posttrial brief and did not supply any evidentiary materials to support the assertion.

{¶ 39} Consequently, there was no evidence in the record to support an award of the $1,668.10 charge as incidental damages, and the trial court erred in including that amount in its damage award.

{¶ 40} Therefore, appellants' fourth assignment of error is sustained.

{¶ 41} Having sustained appellants' assignments of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand this cause for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

BROWN and DORRIAN, JJ., concur.