TRANS–GEAR, INC., Appellee,

v.

LICHTENBERGER, Appellant.

[Cite as *Trans–Gear, Inc. v. Lichtenberger* (1998), 128 Ohio App.3d 504.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 97–T–0119.

Decided June 22, 1998.

506

*Keating, Keating & Kuzman* and *Daniel G. Keating,* for appellee.

*Ted Macejko, Jr.,* for appellant.

CHRISTLEY, Judge.

This is an accelerated calendar appeal. Appellant, Charles Lichtenberger, appeals the decision of the Girard Municipal Court that ordered him to pay the sum of $2,737.53 to appellee, Trans–Gear, Inc. For the reasons that follow, we reverse the judgment of the trial court and remand the matter to the trial court for the entry of judgment in favor of appellant.

The case arose out of an alleged oral promise to pay the debt of another. Trans–Gear brought suit against Lichtenberger seeking payment of a debt incurred by one Chris Booher. That debt resulted from repair work performed by Trans–Gear on Booher's truck. Lichtenberger filed an answer alleging that the Statute of Frauds barred the complaint. The case proceeded to a bench trial on May 28, 1997. Lichtenberger and the president of Trans–Gear, John Keller, were the only witnesses. A brief summation of the pertinent testimony and findings of the trial court is provided below.

Trans–Gear is in the business of repairing heavy-duty trucks. Lichtenberger, from 1981 through 1990, was a part owner of Erskine Xpress, Inc. ("Erskine"), a trucking business. That business was sold in 1990, but it retained Lichtenberger as a dispatcher. He testified that he was neither an officer nor a stockholder of Erskine. Keller also understood that Lichtenberger was only an employee of Erskine.

In August 1995, Lichtenberger called Trans–Gear for the purpose of having Trans–Gear repair a truck owned and operated by Booher. Booher was an owner-operator under contract with Erskine. When Booher's truck developed transmission problems, Lichtenberger contacted Trans–Gear "to get his man back on the road," according to the trial court. The court made a finding that Lichtenberger personally guaranteed payment to Trans–Gear for the repair work.

Despite contrary testimony from Lichtenberger, the court also found that Lichtenberger was notified in advance that the repair work on the truck would cost approximately $3,700. The court also found that Trans–Gear refused to perform the work unless Lichtenberger guaranteed payment. As a result of, and in reliance on, Lichtenberger's guaranty, Trans–Gear performed the work.

The court further found that Lichtenberger and Trans–Gear had a long-term relationship; that Trans–Gear had, in the course of past dealings with Lichtenberger, extended credit to him; that Lichtenberger always maintained good credit with Trans–Gear; that in the course of past dealings, Lichtenberger would honor his promise to see to payment for the repair-work debts of his drivers; and that this relationship was "based on trust rather than documented in writing."

Lichtenberger's testimony was to the contrary, stating that past credit had been extended to him for work on his own trucks, although he acknowledged that he had arranged a previous repair on Booher's truck. The record shows that those prior services for Booher were billed on Lichtenberger's account and were paid by four checks: two Lichtenberger checks, an Erskine check, and a Kodiak Express, Inc. check. The copy of the Erskine check had Lichtenberger's name typed on it, below the Erskine imprint. There was no claim that it was signed by Lichtenberger.

The trial court found that Trans–Gear, in reliance on Lichtenberger's earlier guaranty, released the truck to Booher after Booher paid $500 towards the repair bill. On or about December 4, 1995, Booher paid another $500 to Trans–Gear in response to Keller's calls to Lichtenberger for payment. Trans–Gear then demanded that Lichtenberger pay the balance of $2,737.53, but Lichtenberger refused because he claimed that Booher no longer worked for Erskine and the debt was not his.

The trial court concluded that Lichtenberger "orally agreed to guarantee the promise of Chris Booher; [Trans–Gear] relied upon said promise to [its] detriment; [Trans–Gear] had a right to rely upon [Lichtenberger's] promise based upon past dealings and the custom within the trucking business; [Lichtenberger] received a benefit by virtue of his promise; and thus [Lichtenberger] is estopped from raising the statute of frauds ([R.C.] 1335.05) as a bar to [Trans–Gear's] recovery." The trial court cited *Gathagan v. Firestone Tire & Rubber Co.* (1985), 23 Ohio App.3d 16, 23 OBR 49, 490 N.E.2d 923, in support of its conclusion of law and ordered Lichtenberger to pay the balance on the repair work bill.

Lichtenberger perfected a timely appeal, asserting one assignment of error:

"The decision of the trial court that appellant entered into a guaranty relationship and the decision to estop appellant from raising the statute of frauds as a defense are clearly erroneous."

In his sole assignment of error, Lichtenberger argues that the trial court erred by finding that he had entered into a guaranty relationship and by finding that the doctrine of promissory estoppel barred the application of the Statute of Frauds in the instant case. He also argues that Trans–Gear failed to establish that it was unable to recover from the original debtor, Booher, and that Lichtenberger cannot be held liable on the debt until such a showing is made.[1]

---

1. Erskine's liability in this litigation was not raised on appeal. Nor was this issue seriously raised at the trial court level. Specifically, Lichtenberger's counsel first indicated in opening argument that Erskine was not liable for Booher's debt. Later, however, in closing argument, Lichtenberger's counsel suggested that if Trans–Gear must hold someone responsible, it should look to either Erskine or Booher. In addition, Trans–Gear's counsel indicated in

■ The Statute of Frauds, as found in R.C. 1335.05, reads:

"No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith * * *."

Pursuant to this statute, an oral promise to answer for the debt of another is generally unenforceable.

■ The trial court found that Lichtenberger made an oral guaranty to answer for the debt of another, but it ruled that the doctrine of promissory estoppel barred the application of the Statute of Frauds to the case. In so doing, the court relied on *Gathagan*. However, *Gathagan* is distinguishable from the instant case, as *Gathagan* dealt with an oral offer of employment for a period exceeding one year, rather than an oral promise to answer for the debt of another.

The Supreme Court of Ohio has expressly outlined the appropriate analysis in determining whether an oral promise of this type is outside the Statute of Frauds. In *Wilson Floors Co. v. Sciota Park, Ltd.* (1978), 54 Ohio St.2d 451, 458–459, 8 O.O.3d 444, 449, 377 N.E.2d 514, 518, the Supreme Court identified two tests to be used in the analysis of an oral promise to answer for the debt of another[2]:

"[T]he leading object rule indicates that, in a determination of whether an oral promise is enforceable to pay the debt of another, the court may employ one of two tests. The court may inquire as to whether the promisor becomes primarily liable on the debt owed by another to a third party. * * * If it is found that the promisor does not become primarily liable for payment of the debt, the court may inquire as to whether the promisor's leading object was to subserve his own business or pecuniary interest."

■ Thus, the first inquiry is whether the promisor became primarily liable on the debt owed by another to a third party, in the sense that the original debtor is discharged as to the original creditor. If the promisor agreed to become primarily liable on the debt and the original debtor has been discharged, then the

---

closing argument that it did not pursue Erskine's liability because Lichtenberger did not have the authority to guarantee the debt on behalf of Erskine.

2. Lichtenberger's counsel referred to this case at the close of trial. When the trial court asked to be provided a copy of the case, counsel promised to do so. The record is unclear as to whether the case was ultimately provided; however, it was not cited in the trial court's judgment entry.

promisor is, in essence, no longer answering for the debt of another, and the Statute of Frauds would have no application. This is often referred to as an "original promise," and in effect, a new contract with new consideration has been formed.

If, however, the trial court determines that the promisor did *not* become primarily liable, and the original debtor remains liable, then the promise is nothing more than a collateral or secondary promise to answer for the debt of another, and the Statute of Frauds is applicable. Then, at that juncture, the court may inquire "whether the promisor's leading object was to subserve his own business or pecuniary interest." *Id.* at 459, 8 O.O.3d at 449, 377 N.E.2d at 518. This is commonly referred to as the leading-object rule and exception. See *Mentor Lumber & Supply Co. v. Victor* (Dec. 31, 1990), Lake App. No. 89–L–14–103, unreported, 1990 WL 237185. When the leading object of the promisor is not to answer for another's debt but to subserve some pecuniary or business purpose of his own involving a benefit to himself, his secondary or collateral promise is not within the Statute of Frauds. *Wilson Floors.*

In the instant case, the record strongly supports the trial court's determination that Lichtenberger was a secondary and not a primary obligor. Clearly, Booher still remained obligated to Trans–Gear, despite any guaranty of Lichtenberger. Thus, the second phase of the *Wilson Floors* test needed to be employed:

"Under the second test, it is of no consequence that when such promise is made, the original obligor remains primarily liable or that the third party continues to look to the original obligor for payment. So long as the promisor undertakes to pay the subcontractor whatever his services are worth irrespective of what he may owe the general contractor, and so long as the main purpose of the promisor is to further his own business or pecuniary interest, the promise is enforceable. Thus, under this test it is not required to show as a condition precedent for enforceability of the oral contract that the original debt is extinguished." *Id.* at 459–460, 8 O.O.3d at 449, 377 N.E.2d at 519.

A determination whether such a collateral or secondary promise exists is a determination of fact, not law. *Mentor Lumber* at 3. In a civil case, "[j]udgments supported by some competent, credible evidence going to all of the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. "[W]here the decision in a case turns upon credibility of testimony, and where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the

reviewing court." *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614, 614 N.E.2d 742, 745.

At trial, Keller testified that Lichtenberger telephoned him and asked him to repair Booher's truck and said: "I am going to take care of this for Chris Booher so go ahead and put it on my account." However, Keller also indicated that he believed that Lichtenberger's promise was to collect money from Booher's pay and use that to pay Trans–Gear on the debt. On cross-examination of Keller, the following exchange occurred with Lichtenberger's counsel:

"Q. Now was it your understanding that Chris Booher was obligated to pay this bill[?]

"A. He was obligated to pay Charles Lichtenberger. Charles Lichtenberger guaranteed I would get my money from him.

"Q. The word guaranteed, that's your understanding of this entire arrangement; isn't that correct?

"A. Yes.

"Q. You understand that Lichtenberger or Erskine Xpress would collect the money out of his pay and get this bill paid?

"A. Yes."

Lichtenberger denied making any such promise to assume the debt, admitting only that he said he would "help them get the money for it." By this, Lichtenberger also testified that he intended only to "help them get the money" for the estimated $700 to $900 of repairs. He claimed that Trans–Gear actually upgraded the transmission and far exceeded their original estimate to him.

The trial court found that Lichtenberger made a collateral, rather than an original, promise to pay the repair debt of Booher.[3] Thus, the first possible exception to the Statute of Frauds was not established. Although the trial court generally appeared to find Keller to be the more credible witness, the trial court did not find that an original promise of primary liability had been made.[4]

We will not disturb this finding on appeal. The record reveals competent, credible evidence supporting a finding that a collateral promise of guaranty was made, particularly Keller's testimony that Lichtenberger guaranteed to pay the debt for Booher by taking money out of Booher's earnings.

---

**3.** The record reveals that Lichtenberger's counsel brought the issue of original versus collateral promises to the trial court's attention, asserting in closing argument that the evidence did *not* establish an original promise.

**4.** Both witnesses had significant memory lapses.

Keller also testified that this was the usual business practice in the trucking industry; however, we note that his testimony referred to trucking companies and not individual employees of those companies. Thus, this testimony as to trade custom was inapposite to the facts of the instant case, as it was Lichtenberger who Keller claimed assumed personal liability for Booher's debt. Nevertheless, Keller also testified that Lichtenberger's guaranty of credit was a practice between the two of them that Keller had successfully relied upon in the past. Thus, the trial court could reasonably conclude that, while Booher owed the primary debt, Lichtenberger had assumed secondary liability.

 It having been established that Lichtenberger had agreed to become secondarily liable through his oral promise, the Statute of Frauds would require a writing unless Lichtenberger's leading object in making the debt was to subserve his own business or pecuniary interest. On this point, the trial court indicated in its promissory-estoppel analysis that Lichtenberger received a benefit from making the promise. However, the court did not elaborate on what that benefit was.

The bare finding of the trial court that Lichtenberger received a benefit is insufficient to demonstrate that Lichtenberger's leading object was to subserve his own business or pecuniary interest.

Although one might make an inference upon an inference that there did appear to be some sort of unique relationship between Erskine and Lichtenberger, there was no evidence or even allegation that Lichtenberger was an agent for Erskine in the transaction at issue. The trial court noted that Lichtenberger was neither an officer nor a shareholder of Erskine. In fact, Lichtenberger testified that he did not have authority to make promises on behalf of Erskine to pay or guarantee the debts of owner-operators under contract with Erskine. As previously mentioned, Keller never indicated that he believed that Lichtenberger was acting other than on his own behalf.

It would be easy to assume that perhaps Lichtenberger wanted to be considered a diligent employee for his efforts in expediting repair problems, or wanted to enhance his reputation in the trucking business. There is, however, not one iota of evidence or testimony to that effect. The only real benefit of the alleged promise, as Lichtenberger asserts in his brief, appeared to accrue to Erskine and Booher.

 Similarly, as this court has previously determined, even an obvious advantage to the promisor can still be too attenuated to conclude that the promisor's leading object in making the promise was to subserve his own business or pecuniary interest. See *Mentor Lumber* at 4–5.

Thus, having concluded that the record does not support a finding that Lichtenberger had a leading object or interest in his own business or pecuniary affairs that would take the secondary or collateral promise out of the Statute of Frauds, we hold that the oral promise to answer for the debt of Booher is unenforceable. As a result, the remaining issue of whether Trans–Gear needed to exhaust its pursuit of Booher before it could pursue Lichtenberger as a guarantor is moot.

We respect the trial court's concern that an injustice would otherwise be created if the Statute of Frauds were to be applied. However, the trial court's conclusion that past practice, trade custom, and the receipt of a benefit by Lichtenberger removed the oral promise from the Statute of Frauds is unsupported by the record.

Lichtenberger's sole assignment of error has merit. The judgment of the trial court is reversed, and we hereby remand this action to the trial court for the entry of judgment in favor of appellant.

*Judgment reversed.*

FORD, P.J., and NADER, J., concur.