**In re Joseph M. MARTZ, Debtor.**

**No. 03–70088.**

United States Bankruptcy Court,
N.D. Ohio.

July 29, 2004.

---

**3.** It would appear that the equity in the home at the time of the payment would be exempt.

Steven L. Diller, Esq., Van Wert, OH, for debtor.

Anthony B. DiSalle, Esq., Toledo, OH, for trustee.

### DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after an Evidentiary Hearing on the Debtor's Objection to the Proof of Claim of Lawrence Woods. As the basis for his objection, the Debtor stated that the claim of Mr. Woods is "based on an assignment" against which he "believes he has defenses and competing claims against the assignee which reduce if not eliminate the claim." (Doc. No. 15). The factual circumstances underlying the instant matter, as presented to the Court at the Hearing, are set forth below. Pursuant to the standard of Bankruptcy Rules 7052 and 9014, this delineation of the circumstances shall constitute this Court's findings of fact.

The Creditor, Lawrence Woods, was invited and then agreed to participate in a business endeavor engaged in by the Debtor, Joseph Martz, and a third-party, Robert Lawson. This business endeavor, which centered on food catering, was incorporated under the name of Lawson & Martz. As consideration for his inclusion in the business endeavor, Mr. Woods contributed $100,000.00 in working capital. Although no formal agreement was ever drawn up, it was the understanding of the Parties that Mr. Woods' role in the Company would be that of a one-third equity owner.

Shortly after Mr. Woods made his capital contribution, the Debtor withdrew $40,000.00 from the business, the authority for which he based upon a short term note that he had with the Company. This act, among a few others, created some consternation between the Parties. To settle their difficulties, the Corporation incurred additional business debt totaling $300,000.00. (Ex. No. 2). Of this amount, $100,000.00 was paid to Mr. Woods personally, $125,000.00 went to the Company for working capital and the remainder was disbursed to the Debtor and Mr. Lawson. Each of the principals of the business—the Debtor, the Creditor, and Mr. Lawson—signed a personal guaranty for this loan. (Ex. No's 3, 4, & 5). This was in contrast to an earlier loan extended to the Company, prior to Mr. Woods' involvement in the business, for which only the Debtor and Mr. Lawson were guarantors.

After experiencing financial difficulties, the Parties' food catering business discontinued operations. At this time, the assets of the Company were liquidated in order to satisfy outstanding obligations of the Corporation; during this process, no proceeds were appropriated by any of the Parties for personal gain. After the liquidation of its assets, the Parties' Corporation still had outstanding obligations. Of the outstanding obligations, substantial balances remained on the aforesaid mentioned debts for which personal guarantees were executed.

Based upon his personal liability, the Debtor paid a substantial sum on the debt incurred by the Company prior to Mr. Woods' involvement for which only he and Mr. Lawson were guarantors; for simplicity sake this will be referred to as the "first debt." As for what will be termed the "second debt," against which all the principals signed as guarantors, neither the Debtor nor Mr. Lawson made any payments from their personal assets on this obligations, with Mr. Lawson discharging his personal liability for both debts through the filing of a Chapter 7 bankruptcy shortly after the Company ceased operations. Instead, with respect to the second debt, only Mr. Woods made payments from his personal assets, in all paying $284,026.13 which, because of previous credits, satisfied the obligation in full. According to the Debtor, this arrangement simply effectuated a prior understanding that had been reached between Mr. Woods and himself. Mr. Woods disputes, however, the existence of any such understanding, calling this Court's attention to the lack of any written agreement.

In exchange for paying the second debt in full, the original note holder assigned to Mr. Woods a judgment that it had previously obtained against the Debtor and Mr. Lawson. This judgment was in the amount of $139,229.55, plus interest, representing the joint and several liability of both the Debtor and Mr. Lawson as personal guarantors on the note. (Doc. No. 6). As it relates to the assignment, two points of clarification need to be made. First, the facts presented in this case indicate that the original note holder had agreed to temporarily forego legal action against Mr. Woods in anticipation of full satisfaction of its obligation. In addition, Mr. Woods acknowledged that at the Hearing only part of his claim of $284,026.13 represented his consideration for the assignment; the other portion simply represented his personal liability on the note.

On October 31, 2003, the Debtor filed a petition under Chapter 13 of the United States Bankruptcy Code. Against the Debtor's estate, Mr. Woods filed a proof of claim in the amount of $284,026.13, representing the full amount of personal assets he expended in order to satisfy the outstanding liabilities of the Parties' Corporation on the second debt.

## DISCUSSION

The matter before the Court is the Debtor's objection to the proof of claim filed by Lawrence Woods. Issues concerning the allowance or disallowance of claims against the bankruptcy estate constitute a core proceeding over which this Court has been conferred with the jurisdictional authority to enter final orders. 28 U.S.C. §§ 157(b)(2)(B) & 1334.

The Debtor, as an individual seeking to reorganize his debts, has brought his bankruptcy case under Chapter 13 of the United States Bankruptcy Code. Bankruptcy Rule 3002 provides that an unsecured creditor wishing to participate and receive a distribution through a debtor's plan of reorganization must file a proof of claim. *In re Jett,* 198 B.R. 489, 490 (Bankr.E.D.Ky.1996). Once filed, § 502(a) states that "[a] claim of interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." Paragraph (b) of this section then goes on to provide "if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim . . . in such amount . . ." 11 U.S.C. § 502(b).

A proof of claim executed and filed constitutes prima facie evidence of the va-

lidity and amount of the claim. FED.R.BANK.P.3001(f). After an objection is raised, the objector bears the burden of going forward to produce evidence sufficient to negate the prima facie validity of the filed claim. If the objector produces evidence sufficient to negate the validity of the claim, the ultimate burden of persuasion remains on the claimant to demonstrate, by a preponderance of the evidence, that the claim deserves to share in the distribution of the debtor's assets. *Spencer v. Pugh (In re Pugh),* 157 B.R. 898, 901 (9th Cir. BAP 1993).

The dispute surrounding the proof of claim filed by Mr. Woods centers on the proper allocation of corporate debt against its principals. The Debtor argues that he is not liable to Mr. Woods for any outstanding obligations; Mr. Woods, on the other hand, is at the opposite end of the spectrum, seeking a determination that the Debtor's estate should be held fully liable for all personal contributions he made on the second corporate debt.

■■ The principle of limited liability is the dominant characteristic of American Corporate law. *Baker v. Raymond International, Inc.,* 656 F.2d 173, 179 (5th Cir. 1981). Yet, as is the situation here, the principal(s) of a corporation may voluntarily agree to become a personal guarantor of corporate debt, often as a precondition to obtaining corporate financing. However, the mere fact that a corporate-principal undertakes to personally guarantee a corporate debt does not impute liability to any of the other principals of the corporation. Instead, whether it is with the corporate-creditor or the guarantor, a co-principal's

liability, unless otherwise imposed by law, only exists by agreement.

As it applies to these tenets, the Debtor asserts that he had an understanding with Mr. Woods which would proceed according to these terms: (1) the Debtor would assume all personal responsibility for paying the first corporate debt; and (2) as consideration therefore, Mr. Woods would undertake to indemnify both the Debtor and Mr. Lawson, as co-guarantors, on the second debt. From these terms, the Debtor now asserts a right of set-off; that is, the Debtor seeks to set-off the amount he personally paid on the first corporate debt against those monies Mr. Woods personally paid on the second corporate debt. Mr. Woods, however, vehemently denied the existence of any such agreement, noting that nothing was ever placed in writing.

■ As with other oral contracts, agreements among the principals of a corporation are generally enforceable. *Sherman v. Haines,* 73 Ohio St.3d 125, 652 N.E.2d 698 (1995); *See also Hughes v. Miner,* 15 Ohio App.3d 141, 473 N.E.2d 53 (1984) (oral promise to pay debt of corporation by majority shareholder not within statute of frauds). All the same, certain types of agreements are not enforceable unless a writing is produced. Unignorable in this respect is that, pursuant to Ohio's statute of fraud provision, the lack of a writing may be raised as a defense when the agreement to be enforced involves a promise to answer for the debt of another. O.R.C. § 1335.05.[1]

In *Trans–Gear Inc. v. Lichtenberger,* the court explained the parameters of this exception to the enforceability of an oral contract as follows:

---

1. In relevant part, this section provides, "[n]o action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person; ... unless the agreement upon

which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."

the first inquiry is whether the promisor became primarily liable on the debt owed by another to a third party, in the sense that the original debtor is discharged as to the original creditor. If the promisor agreed to become primarily liable on the debt and the original debtor has been discharged, then the promisor is, in essence, no longer answering for the debt of another, and the Statute of Frauds would have no application. This is often referred to as an 'original promise,' and in effect, a new contract with new consideration has been formed.

If, however, the trial court determines that the promisor did not become primarily liable, and the original debtor remains liable, then the promise is nothing more than a collateral or secondary promise to answer for the debt of another, and the Statute of Frauds is applicable.

128 Ohio App.3d 504, 509–10, 715 N.E.2d 608, 611 (1998). As applied here, the agreement the Debtor espouses exists is clearly akin to the conditions set forth in the latter paragraph, and thus implicates the statute of frauds—the Debtor is asking that he be indemnified by Mr. Woods on a debt, the consideration for which arises for payments made by the Debtor on an obligation against which Mr. Woods has no personal liability. Furthermore, nothing would suggest that the terms of the agreement espoused by the Debtor placed Mr. Woods in privity with the primary lender, thus making Mr. Woods simply a secondary promisor.

However even if, for argumentative sake, this were not the case, the evidentiary burden is still on the Debtor, as the party seeking to use parol evidence, to show that a contract existed. *American Bronze Corp. v. Streamway Products*, 8 Ohio App.3d 223, 228, 456 N.E.2d 1295, 1301 (1982). In contrast to this burden, however, the Court does not have before it any appreciable corroborating evidence to substantiate the existence of the agreement espoused by the Debtor. To the contrary, the Court only has before it the self-serving testimony of the Debtor.

Consequently, the Court, based upon both factual and legal deficiencies, must operate under the premise that no agreement was entered into by the Parties regarding their respective personal liabilities on the corporate debts. Therefore, Mr. Woods, not being a personal guarantor of the first corporate debt, has no legal liability for paying this obligation, meaning that the Debtor cannot seek a right of set-off for the amounts he personally paid on the obligation. In contrast, therefore, to the Debtor's overall position, Mr. Woods' claim cannot be reduced to zero or otherwise eliminated.

In a similar manner, however, the Court must also dismiss outright awarding the full $284,026.13 sought by Mr. Woods on his proof of claim. The difficulty here is that, although the Debtor is also liable on this debt, this amount represents the entire amount paid by Mr. Woods on the second corporate debt. It follows, therefore, that to allow the claim in full would, for all practical purposes, completely abrogate his personal liability on the debt. In other words, to allow Mr. Woods' claim in full would permit him to avoid the business risk he undertook when he initially invested in the Company. This is simply not acceptable considering his status as both a cosignatory on the debt and an equity security holder in the now defunct corporation. In practice, Mr. Woods agreed to this conclusion through acknowledging that only a part of his claim represented the consideration for the assignment of the judgment, with the other portion representing his personal liability on the note.

There still, however, remains a major facet of this case yet to be addressed: contribution. Ohio law provides that where, as here, "two or more are under a common obligation to perform some lawful duty involving the expenditure of money, and one of them performs the whole duty and discharges the obligation, he is entitled to have contributory reimbursement from the others equally bound with him." *Terry v. Claypool,* 77 Ohio App. 87, 93, 65 N.E.2d 889, 892 (3d Dist.1946). Generally, the amount of the contributive share (in the absence of a contrary agreement or other equitable circumstances), is apportioned equally among the co-obligors, with the payor entitled to recover a proportionate share from each obligor to the extent that the payor's remuneration is in excess of his proportionate share. OHIO JURISPRUDENCE 3d, *Contribution,* § 15. In this case, as there were three guarantors—the Debtor, Mr. Woods and Mr. Lawson—on the note against which Mr. Woods fully paid the obligation of $284,026.13, the Debtor's contributive share is one-third of that amount, or $94,675.38.

Nevertheless, this case contains an additional wrinkle: the Debtor, jointly and severally, is liable on a $139,229.55 judgment assigned to Mr. Woods by the original note holder. Consequently, the question of which figure to utilize naturally arises: the judgment amount or the measure of the Debtor's contributive share.

As acknowledged by the Debtor, the judgment would clearly control had it been assigned to a disinterested third-party. Naturally, however, Mr. Woods is not a neutral third-party. And after having had the opportunity to examine the matter, a proper application of Ohio law, as is applicable here, requires that an entity, such as Mr. Woods who is not disinterested, is proscribed from increasing their contributive share through the assignment of a judgment.

In *Marc Glassman, Inc. v. Bag–A–Sweet Candy Co.,* 1995 WL 739622 (Ohio Ct.App. 8th Dist. Cuyahoga County 1995), an unreported case, the Court of Appeals for Eighth District in Ohio was confronted with an almost identical fact pattern. 1995 WL 739622 (Ohio Ct.App. 8th Dist.1995). A corporation was liable on two loans, evidenced by cognovit notes. The notes were guaranteed by three parties. After defaulting on the notes, the assets of the corporation were liquidated to pay the notes; a deficiency, however, still remained. One of the guarantors then paid the deficiency, taking an assignment of the notes and remaining guarantees from the note holder as consideration. Thereafter, the payor, as assignee of the note, commenced a collection action against the other two guarantors, who were husband and wife, for the full amount paid on the deficiency.

Based upon these facts, the court in *Bag–A–Sweet Candy Co.,* held that due to the existence of a right of contribution, the payor was not entitled to recover from the husband and wife guarantors the full amount due on the assigned notes:

> Although the [payor] might, under the proper circumstances, be entitled to a judgment for contribution against the [husband and wife], it cannot, as a purported assignee, take judgment for the full amount alleged to be owed on the ... Notes. [Payor's] right of contribution is limited to the amount paid that exceeds [payor's] proportionate share of the liability.

*Id.* at *2. The reasoning upon which this is based simply follows the theme, previously promulgated by the Supreme Court of Ohio when addressing a right of contribution, that one should not be permitted to do indirectly (collect on an assigned judg-

ment) what they could not have done directly (receive more than a distributive share). *Royal Indemnity Co. v. Becker,* 122 Ohio St. 582, 173 N.E. 194 (1930).

Similar to above, it has also been held under Ohio law that when, after payment, a judgment has been assigned to a debtor, his action against any codebtors is not through the judgment or underlying note, but rather through the maintenance of a separate action for contribution. *First National Bank in St. Petersburg v. Hoffman,* 1991 WL 18686 (Ohio Ct.App. 8th Dist. Cuyahoga County 1991), *citing Rainbow Stone Co. v. Ten Color Stone Co.,* 141 N.E.2d 266, 76 Ohio Law Abs. 432, 433 (Ohio Ct.App. 8th Dist.1957). All the same, taking an assignment of a judgment, even when a right of contribution is present, is not necessarily a futile act. It is generally recognized that, "[w]here an assignment is taken, an intention to keep the principal obligation alive for the purpose of enforcing contribution is generally deemed to be shown." 18 Am.Jur. 2D, *Contribution,* § 91 (2003). The assignment of a judgment will not, however, trump principles of contribution.

To bring things together then, these are the holdings of this Court. In liquidating the claim held by Mr. Woods, the Court must proceed on the assumption that, contrary to the Debtor's position, no agreement existed between the Parties regarding their respective liabilities. In the absence of an agreement, applicable law shows that Mr. Woods, having fully paid an obligation for which the Debtor was also liable, is entitled to receive a distributive share from the Debtor. As against the judgment assigned to Mr. Woods, this entitlement to a distributive share, being directly related to the assignment, trumps the Debtor's liability on the judgment vis-a-vis Mr. Woods. Similarly, Mr. Woods, having taken the risk by investing in the food catering business, may not avoid liability on the second corporate debt by seeking the allowance of his claim for the full amount of the remunerations he made on the obligation. Finally, in the absence of any agreement, the Debtor may not seek any set-off for the amounts he paid on the first corporate debt, as Mr. Woods has no personal liability thereon.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Debtor's objection to the Proof of Claim filed by Mr. Woods is hereby Sustained in Part.

It is **FURTHER ORDERED** that the proof of claim filed by Lawrence Woods, be, and is hereby, allowed as an unsecured claim in the amount of Ninety-four Thousand Six Hundred Seventy-five and 38/100 dollars ($94,675.38).