DRAKE, PHILLIPS, KUENZLI & CLARK, APPELLANT, *v.* SKUNDOR, APPELLEE.

(No. 5-84-36—Decided February 19, 1986.)

*Oxley, Malone, Fitzgerald & Hollister* and *Robert B. Hollister,* for appellant.

*Perry Skundor, pro se.*

GUERNSEY, P.J. This appeal is taken by plaintiff, Drake, Phillips, Kuenzli & Clark, an Ohio partnership, from a judgment of the Findlay Municipal Court in a trial without a jury, which held that plaintiff's recovery of payment for legal services from defendant Perry Skundor was barred by the Statute of Frauds.

Attorney Thomas Drake, a member of plaintiff partnership, entered into an oral contract with defendant whereby Drake was engaged to represent defendant's son, David Skundor, in a felony case. Defendant paid Drake the sum of $350 as a retainer, and Drake obtained the release of David from jail pending trial. Drake's representation then continued for about seven months.

At the trial defendant took issue with Drake's representation, and voiced disappointment with the result, as defendant wanted his son to be forced into a drug rehabilitation program. However, the trial court found Drake's representation to be above reproach, noting David Skundor's uncooperative attitude, his untruthfulness toward Drake, and his own admission that he would not curtail his use of drugs.

Pending trial, Drake approached defendant to sign a promissory note to guarantee payment for his legal services. Defendant refused to sign, stating that his son was responsible for payment. Problems then arose as to Drake's continued representation of David, and he asked to be removed as counsel. To date, defendant has denied responsibility for payment of the legal fees, and Drake has not received any payment.

Plaintiff partnership then filed its complaint alleging that defendant was responsible for payment, as that was the understanding at the commencement of Drake's representation, and also that defendant's own pecuniary and/or business interests had been served.

The trial court, while finding that the representation was above reproach and that the fees, totalling $1,016.25, were not unreasonable, nevertheless determined that defendant's agreement was "* * * an agreement to answer for the debt of another and was not in writing — hence, in violation of the Statute of Frauds." Plaintiff asserts two assignments of error.

First assignment of error:

"The trial court erred as a matter of law in concluding that appellant's claim is barred by the statute of frauds."

Ohio's Statute of Frauds, R.C. 1335.05, provides in pertinent part:

"No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person * * * unless the agreement upon which action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."

Plaintiff contends that this is not a case where defendant is answering for the debt of his son, but rather is an original contract between plaintiff and defendant, whereby the son is in the position of a third-party beneficiary. Moreover, plaintiff argues that the

defendant was serving his own pecuniary and/or business interest, and is therefore required to pay for the legal services.

The trial court distinguishes in these words:

"The reason is that David Skundor was an adult at the time of the proceeding. Defendant Perry Skundor had absolutely no duty to support, nor to pay the debts of, David Skundor, and anything paid on behalf of David Skundor contributed anything [*sic*] to the business or income of Perry Skundor. There is no evidence that David Skundor was anything to Perry Skundor but a son, for whom one would expect a father to have emotional attachment, which might lead a normal, loving and caring father to go to the limit for the boy's protection, care and well-being. But, there is, and was, no obligation to do so."

The focus of our consideration of this assignment of error will be to determine if defendant's oral promise is operative between defendant and plaintiff in light of the Statute of Frauds.

Although a promise to pay the debt of another has been defined as an undertaking by a person not previously liable, for the purpose of securing or performing the same duty for which the original debtor continues to be liable, the question of whether or not an oral promise comes within the meaning of the Statute of Frauds depends to a great extent upon the nature of the promise and the surrounding circumstances.

Annotation (1951), 20 A.L.R. 2d 246, 247-248 specifically addresses this factual determination, stating:

"The distinction between a 'collateral' promise to answer for the debt, default or miscarriage of another person, which is within the statute, and an 'original,' independent obligation of the promisor, which is without the statute, is concededly difficult, and the cases on the subject are in general conflict.
"* * *

"Although no comprehensive test for differentiating between an original undertaking and a collateral one has been established by the decisions, some of the significant factors which are considered by the courts are the following: that an undertaking renders the promisor a guarantor or surety upon a debt owing by a third person; that as between the debtor and the new promisor, the former should pay; that credit is extended primarily to the old debtor and the tenor of the entire transaction is that the promisor purported to help out the old debtor and verbally promised to pay his debt; that the leading purpose of the promisor is to subserve or promote an interest of his own, and the promise is made upon a consideration beneficial to the promisor; and that the promisee charges the account on his books to the promisor, rather than to the original debtor."

Likewise, the Supreme Court of Ohio had adopted this factual-determination basis in *Wolf* v. *Friedman* (1969), 20 Ohio St. 2d 49 [49 O.O.2d 306], paragraph one of the syllabus, wherein it was specifically held:

"Section 1335.05, Revised Code, precludes an action against a husband by an attorney to recover on an express promise by the husband to pay for legal services that his wife employed the attorney to render for her, where neither that promise nor any memorandum or note thereof was in writing and where it is not alleged and proved that the leading object of the husband in making that promise was to subserve some pecuniary or business purpose of his own, *although it may be alleged and proved that those services were necessary for and beneficial to not only the wife but also the husband.*" (Emphasis added.)

Simply stated, if it can be determined that defendant secured the services of Drake for his own benefit, and not merely for his son, the oral promise would constitute an original obligation

of the defendant, and would not be subject to the Statute of Frauds.

Our review of the undisputed facts does not indicate an average paternal interest, but rather an extemely active father who embraced every opportunity for familial accord.

It was the defendant who first contacted Drake, and engaged Drake's services. Defendant himself paid the initial retainer. In a prior case in which Drake represented David Skundor, the defendant played a major role, even when defendant was located in Arizona, via the telephone.

The defendant's own testimony was that his chief concern was the release of David, adding "[b]ecause I, as a father, it's pretty hard to see your son behind bars."

Moreover, defendant paid for the polygraph examination of his son, and on his own volition investigated the processes of drug rehabilitation at the Straight Program in Cincinnati, and at Flower Hospital in Toledo.

It is clear that Drake was operating from the beginning under the assumption that defendant would pay for his services, as the billing was kept in the name of, and sent to, the defendant, and the trial court found in its judgment entry "as a matter of fact that Perry Skundor and Thomas D. Drake entered into a contract whereunder Mr. Drake was engaged to represent the defendant's son, David Skundor, in a felony case."

While we agree with the trial court that defendant was under no legal obligation to provide legal services for his son, we do not view this situation as a promise by defendant to pay the debt of another.

The undisputed evidence compels the single conclusion that defendant's primary purpose was to subserve his own interests, and the oral promise to pay was made upon a consideration beneficial to defendant. Therefore, the contract is original, and operative between plaintiff and defendant, with the defendant promising to pay his own debt. Such promise is not within the Statute of Frauds, even though, as a result, the obligation served to benefit another.

This assignment of error is well-taken.

Having thus found error prejudicial to the plaintiff requiring reversal, plaintiff's second assignment of error, asserting error of the trial court in providing defendant an affirmative defense not raised by his answer, is rendered moot, and accordingly is overruled.

For the prejudicial error thus found the judgment is reversed, and final judgment entered for plaintiff against defendant for damages in the undisputed amount of $1,016.25. The cause is remanded to the trial court for execution of the final judgment so rendered.

*Judgment reversed.*

COLE and MILLER, JJ., concur.