OPINION
Defendants-appellants, Elio International, Inc., Midwest Farms, Inc., and Alio and Shirley Lynn Gasbarro (collectively referred to as "defendants"), appeal from a judgment of the Franklin County Court of Common Pleas in favor of plaintiff-appellee, the Saker Family Trust, in the amount of $81,349 plus interest.
Plaintiff is the assignee of an account of the Theodore R. Saker, Sr., Legal Professional Association ("Saker"). Alio Gasbarro is the president and sole shareholder of Elio International, Inc.; his family controlled Midwest Farms, Inc. and those predecessor corporations that are named in this action. Beginning in July 1988 and continuing until March 1996, Saker performed legal services for Gasbarro and the other named defendants. On July 30, 1997, plaintiff filed a complaint seeking recovery of those attorney fees defendant had not yet paid to plaintiff. According to Saker's records, he performed legal services totaling $393,000 in the eight years he worked for Gasbarro and the other defendants.
After a trial to the court, the trial court entered judgment in plaintiff's favor in the total amount of $81,349 plus interest. The trial court found the parties had entered into an accord regarding the fees owed to plaintiff, and it upheld that accord. The trial court also found the same amount was due to plaintiff under the theory of quantum meruit for the beneficial services Saker had provided to Gasbarro. While the trial court found that Saker actually provided legal services in the amount of $319,734, the court reduced that amount to $81,349 due to defendants' payments, as well as agreed "discounts" between Saker and Gasbarro.
Defendants appeal, assigning the following errors:
 I. THE COURT COMMITTED ERROR IN NOT SUSTAINING DEFENDANT'S OBJECTION CONCERNING PLAINTIFF'S INTRODUCTION OF QUANTUM MERUIT ON REDIRECT EXAMINATION.
 II. THE COURT COMMITTED ERROR IN FINDING THAT ALIO GASBARRO WAS THE ALTER EGO OF THE CORPORATIONS NAMED AS DEFENDANT.
 III. THE COURT COMMITTED ERROR IN DETERMINING THAT THE PLAINTIFF PRESENTED "CREDIBLE EVIDENCE" AS TO THE AMOUNTS BILLED AND THE PAYMENTS RECEIVED.
 IV. THE COURT COMMITTED ERROR IN DETERMINING THAT ALIO GASBORRO BENEFITTED FROM THE LEGAL SERVICES OF THEODORE SAKER AND THAT THE STATUTE OF FRAUDS DID NOT APPLY.
Defendants' first assignment of error contends the trial court erred in allowing, over defendants' objection, plaintiff's expert to testify on redirect examination to the reasonable hourly rate for Saker's services under the quantum meruit theory of recovery. In the absence of a fee agreement, an attorney is entitled to recover the reasonable value of services rendered on the basis of quantum meruit. Baer v. Woodruff (1996), 111 Ohio App.3d 617,620. The appropriate measure of quantum meruit damages is the reasonable value of the material and services that accrued to the actual benefit of the other party, less any damages suffered by the other party. Hughes v. Oberholtzer (1954),162 Ohio St. 330, 335; Abbruzzese v. Miller (Sept. 26, 1996), Franklin App. No. 96AP-265, unreported.
Because all involved agreed that no express fee agreement ever existed between Saker and any of the defendants for the specific legal services Saker provided to defendants, quantum meruit is a proper theory of recovery. Baer, supra. Defendants, however, objected when plaintiff's expert witness was asked the fair hourly value of Saker's services. Defendants assert that the question was outside the scope of their cross-examination of the witness.
Generally, the redirect examination of a witness cannot exceed the scope of the cross-examination. "A witness who has been fully examined in chief and cross-examined, may be re-examined to explain the sense and meaning of any expression used in cross-examination; but he cannot be examined concerning new matter not referred to in the cross-examination, as to which he might have been examined in chief. Any relaxation of the rule is but an exercise of discretion, and not reviewable." Holtz v. Dick (1884),42 Ohio St. 23, paragraph seven of the syllabus. The trial court thus has discretion to allow a witness to testify on redirect examination to facts that might have been elicited during the witness' testimony in chief. Id.; Torok v. Torok (Jan. 22, 1987), Cuyahoga App. No. 51611, unreported; Evid.R. 611(A).
Defendants do not explain how the trial court abused its discretion in allowing the expert witness to testify to the fair hourly value for Saker's legal services. The witness' direct examination mainly concerned the reasonableness of the hours Saker spent on the various matters he handled for defendants, and a question concerning the fair value of that time could have been elicited in that direct examination. After defendants inquired on cross-examination whether any agreement existed between Saker and Gasbarro, the relevance of questions concerning the fair value of the services became apparent. Under the circumstances, neither side was surprised by the question. Because the trial court did not abuse its discretion, especially in a trial to the court, defendants' first assignment of error is overruled.
Defendants' second assignment of error contends the trial court erred in holding Gasbarro personally liable as the alter ego of the corporate defendants. Given the evidence presented, Gasbarro was liable not as an alter ego of any corporation, but rather because he was Saker's client: he requested legal services be performed and he promised to pay for them. Supporting the trial court's determination, John Bernard, an associate of Gasbarro, testified that Gasbarro hired Saker to perform services for him and the affiliated corporations, and Gasbarro agreed to pay Saker for these services. Gasbarro first hired Saker to represent Gasbarro's nephew in a criminal action. After that case was settled, Gasbarro kept giving Saker additional work concerning all of his different business activities, including collection suits and the formation of Gasbarro's different corporations. Gasbarro authorized all payments to Saker for his legal services, negotiated discounts on the bill, and even indicated he would be responsible for Saker's payments. The trial court did not have to "pierce the corporate veil" in order to impose liability on Gasbarro. Cf. Thompson, Hine Flory v. Katz
(Dec. 10, 1991), Franklin App. No. 91AP-624, unreported. Defendants' second assignment of error is overruled.
Defendants' third assignment of error contends the trial court erred in determining that credible evidence was presented to prove both the amount of legal services provided and the amount of payments received. Payment is a defense; defendants have the burden of proving payment. Wolf Automotive v. Rally Auto Parts,Inc. (1994), 95 Ohio App.3d 130, 135. Defendants, not plaintiff, were required to present credible evidence showing the amount owed had been reduced by payments.
Plaintiff presented credible evidence to demonstrate the amount of legal services Saker provided to Gasbarro. The majority of Saker's own testimony consisted of discussing the work he performed for Gasbarro and his many different concerns. He supported his testimony with exhibits which competently demonstrate the actual hours Saker worked for Gasbarro, including two large notebooks of Saker's diaries reflecting the hours he worked for Gasbarro during the years in question.
Defendants nonetheless contend there was no competent evidence to demonstrate the amount accruing to plaintiff for hours of services provided. Contrary to defendants' contentions, plaintiff's expert witness testified he analyzed all of Saker's diaries in the relevant time period and computed the actual hours billed to conclude that the reasonable value for Saker's services was $319,734.
The trial court then reduced that number by defendants' payments and by other agreed "discounts" between Saker and Gasbarro. In support of these findings, the record reflects that Saker himself testified to (1) defendants' paying $200,000 in legal fees over the years Saker worked for Gasbarro, and (2) discounts negotiated between Saker and Gasbarro that reduced the final amount due to $81,349. The trial court's determination of the amount of legal services billed and still owing was supported by competent, credible evidence. Defendants' third assignment of error is overruled.
Finally, defendants' fourth assignment of error contends the trial court erred in finding R.C. 1335.05, the Statute of Frauds, did not render Gasbarro's promise to pay unenforceable. Specifically, defendants assert Gasbarro's promise to pay the debts of another, absent a benefit to himself, triggers the Statute of Frauds; because Saker and Gasbarro had no written agreement, Gasbarro's promise to pay Saker's legal fees is unenforceable.
If the agreement between Saker and Gasbarro be deemed to hold Gasbarro responsible for payment for services rendered to the other corporate defendants, the Statute of Frauds is implicated. Under the "leading object rule," however, the Statute of Frauds does not apply to a promisor's oral agreement to become secondarily liable on another's debt if the promisor's leading object is not to answer for the debt of another but to subserve some pecuniary or business purpose of the promisor involving a benefit to the promisor. Trans-Gear, Inc. v. Lichtenberger (1998),128 Ohio App.3d 504, 510, citing Wilson Floors Co. v Sciota Park.Ltd. (1978), 54 Ohio St.2d 451, 458-459; Thompson, Hine Flory v.Katz, supra.
In Builder Appliance Supply, Inc. v. Hughes (1983),13 Ohio App.3d 207, this court set out four factors to be considered when applying the leading object rule to an oral promise to pay the debt of a corporation: "* * * (1) whether the promisor holds an office in the corporation; (2) whether the corporation owes the promisor any money; (3) whether the promisor receives a salary from the corporation; and (4) whether the promisor has an ownership interest in the corporation. * * *" Id. at paragraph two of the syllabus; see, also, Hamer v. O'Leary (Aug. 8, 1991), Franklin App. No. 91AP-258, unreported. The inquiry is directed to determining whether the promisor made the promise in order to subserve or promote the promisor's own interests or the interests of the corporation. Hughes, supra, at paragraph two of the syllabus.
Applying the factors set forth in Hughes, Gasbarro was at various times a majority shareholder in the various corporations for whom Saker performed legal services. Gasbarro decided when to incorporate those entities and when to terminate them. Some of the corporations, such as Midwest Farms, Inc. and Royal Free Products, even when ostensibly under the direction of others, were owned by entities that Gasbarro owned. Gasbarro's son testified that Gasbarro was a creditor of those various companies, and that when the companies needed money, Gasbarro's son would ask Gasbarro for an infusion of capital. Indeed, Gasbarro's son understood Elio Investments, Inc., one of the defendant corporate companies here, to be a trust that Gasbarro set up to benefit his children in the future. Given those facts, services rendered to the various companies suggest a personal benefit to Gasbarro under the Hughes factors. Cf. Drake, Phillips, Kuenzli Clark v.Skundor (1986), 27 Ohio App.3d 337 (taking a father's promise to pay his son's legal fees out of the application of the statute of frauds because the primary purpose of father's promise was for his benefit and "familiar accord").
Indeed, apart from the Hughes factors, the trial court concluded the services Saker provided benefited Gasbarro individually. Supporting the trial court's finding, the evidence reveals that Gasbarro was personally interested in all the legal services Saker provided to Gasbarro, his relatives, and the defendant corporations that Gasbarro was involved with, and that Gasbarro was the one who assigned Saker the work. Cf. Mayer,Terakedis Blue v. KVM Resources Internatl., Inc. (Nov. 20, 1984), Franklin App. No. 84AP-478, unreported.
In the final analysis, because of Gasbarro's involvement with all the businesses here, Gasbarro benefited from the legal services that Saker provided to him and the various corporations. Gasbarro's promise to pay legal fees is not rendered unenforceable under the Statute of Frauds. Defendants' fourth assignment of error is overruled.
Having overruled defendants' four assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
 ______________________ BRYANT, JUDGE
LAZARUS and KENNEDY, JJ., concur.