[Cite as *Shore v. Hards*, 2017-Ohio-7123.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## GEAUGA COUNTY, OHIO


| | | |
|---|---|---|
| MICHAEL A. SHORE CO., L.P.A., | : | **O P I N I O N** |
| Plaintiff-Appellee/ Cross-Appellant, | : | |
| | : | **CASE NO. 2015-G-0038** |
| - vs - | : | |
| | : | |
| ESTATE OF BERTINA HARDS, BY & THRU JACQUELINE ADAMS, ADMINISTRATOR WWA, et al., | : | |
| | : | |
| Defendants-Appellants/ Cross-Appellees, | : | |
| DANIEL S. WHITE, | : | |
| Third Party Defendant-Appellee/ Cross-Appellant. | : | |


Civil Appeal from the Geauga County Court of Common Pleas, Case No. 04 M 000045.

Judgment: Affirmed in part, reversed in part, and remanded.


*A. Pearce Leary,* 100 Park Place, Chagrin Falls, OH 44022 (For Plaintiff-Appellee/Cross-Appellant, Michael A. Shore Co., L.P.A.).

*Daniel S. White,* Daniel S. White, Esq., 34 Parmelee Drive, Hudson, OH 44067 (Third Party Defendant-Appellee/Cross Appellant).

*Jacqueline* and *Kenneth Adams,* pro se, 9441 Pekin Road, Novelty, OH 44072 (Defendants-Appellants/Cross-Appellees).


CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellants/cross-appellees, Jacqueline and Kenneth Adams ("the Adams"), appeal from the judgment of the Geauga County Court of Common Pleas, awarding them $10,000.00 compensation for the frivolous conduct of appellees/cross-appellants, Michael A. Shore Co., L.P.A. and Daniel S. White (collectively "Shore") as well as the trial court's determination that they were not entitled to an accounting of funds expended to Shore in the course of its representation of the former guardianship of Ms. Adams mother, Bertina Hards, deceased. Alternatively, Shore cross appeals, contesting the trial court's award of summary judgment to the Adams on their underlying complaint, as well as the finding of frivolous conduct and the $10,000.00 sanction. The judgments are affirmed in part, reversed in part and remanded for further proceedings.

{¶2} In June 1997, Daniel S. White, Esq., filed a complaint in the Cuyahoga County Court of Common Pleas against Dean Witter Reynolds, Inc., and Thomas E. Moore, on behalf of Jacquelyn Adams, in her capacity of Guardian for her mother, Bertina Hards. The suit concerned claims that Dean Witter Reynolds, Inc., and Thomas E. Moore negligently and/or fraudulently managed the investments and funds of the ward. Attorney White was a member of the law firm of Michael A. Shore Co., LPA. The Cuyahoga County Court of Common Pleas entered summary judgment against the plaintiffs and in favor of the defendants based upon the expiration of the statute of limitations. The judgment was affirmed on appeal. *Adams v. Dean Witter Reynolds, Inc.*, 8th Dist. Cuyahoga No. 74379, 1999 WL 401394 (June 17, 1999).[1]

{¶3} For legal services in the above case, Shore was paid $5,000 from the Bertina Hards Guardianship account and an additional $10,573.69 from an inter vivos

---

1. In that matter, Ms. Adams asserted that the statute of limitations tolled, pursuant to R.C. 2305.16, due to her mother's impaired mental state. The Eighth District concluded, however, that the cause of action was governed by the two-year, rather than the four-year, limitations period; as a result, the court held the cause of action accrued and the statute of limitations expired prior to the ward's impairment.

trust of which Bertina Hards was the beneficiary. Jacquelyn Adams sought approval from the Lake County Probate Court and from the Trustee of the trust for payments to the firm.

{¶4} In December 1999, Michael A. Shore Co., LPA, represented by Attorney White, filed a complaint in the Shaker Heights Municipal Court, naming Kenneth J. Adams; Jacquelyn A. Adams; and Jacquelyn A. Adams, Guardian for Bertina Hards, and Incompetent person, as defendants. The complaint alleged defendants were personally liable to Shore for $12,861.90 on account as a result of an agreement the parties allegedly entered relating to the Dean Witter litigation. According to Shore, Jacqueline Adams agreed to personally reimburse Shore for any outstanding fees relating to the litigation that the estate rejected.

{¶5} Defendants filed an answer, counterclaim, and third-party complaint in response to the complaint. The answer denied all claims. The counterclaim and third-party complaint alleged Michael A. Shore Co., LPA; Daniel White, esq., and Michael A. Shore, esq., individually committed legal malpractice and fraud in their representation in the Dean Witter litigation. The counterclaim and third-party complaint sought damages in excess of $5,000,000. Because the amount claimed by the Adams exceeded the monetary jurisdiction of the municipal court, the case was transferred to the Cuyahoga County Court of Common Pleas.

{¶6} In an attempt to resolve the fee dispute, Jacqueline Adams moved the Lake County Probate Court for authority to expend funds to pay the $12,681.90. The Lake County Probate Court deferred ruling on the Adams' motion to allow the parties an opportunity to discuss a possible settlement. Later, the Lake County Probate Court

3

determined the $12,861.90 in fees requested by Shore was reasonable and granted Adams' motion to expend funds.

{¶7} Later, however, Adams contested the expenditure of funds from the estate, despite her previous motion. The Lake County Probate Court, sua sponte, appointed a special master commissioner to resolve the issue. The special master eventually concluded that the fee amount Shore had been previously awarded for representing the estate, in excess of $15,000.00, was sufficient and it was not entitled to an additional $12,861.90 from the estate. This court affirmed that determination in *In re The Guardianship of Bertina Hards*, 11th Dist. Lake No. 2002-L-032, 2003-Ohio-1207.

{¶8} While the Cuyahoga Case was pending, Bertina Hards passed away. An estate was opened in the Geauga County Probate Court and Jacqueline A. Adams was appointed administrator of the Estate of Bertina Hards. In June 2002, Michael A. Shore, LPA filed a claim against the Estate of Bertina Hards, seeking payment of the outstanding $12,861.90 in fees. The claim was subsequently rejected by Jacquelyn Adams as Administrator of the Estate of Bertina Hards.

{¶9} In August 2002, Michael A. Shore Co., LPA, filed a complaint against Jacqeline A. Adams as Administrator of the Estate of Bertina Hards, as well as Jacqueline and Kenneth Adams individually, in the Geauga County Court of Common Pleas seeking payment of the $12,861.90. The defendants filed an answer and counterclaim alleging an abuse of process; they also sought an accounting of all fees previously paid to Shore. The Cuyahoga County case was subsequently transferred to the Geauga County Court of Common Pleas in 2004 and the actions were purportedly

4

consolidated.[2]  Prior to the transfer, on October 15, 2003, Shore moved to voluntarily dismiss its complaint without prejudice.  The Adams objected to the voluntary dismissal and the case proceeded.

{¶10} In March 2004, the Adams moved for summary judgment on Shore's claims.  The Adams also sought a determination regarding whether Shore's claims were frivolous.  Shore filed a motion for summary judgment on the counterclaim.  On June 16, 2004, the trial court granted the Adams' motion for summary judgment on Shore's claim for attorney fees.  The trial court observed:

> {¶11} Plaintiff cannot make a believable or an ethical claim that a portion of its services were performed for these Defendants when this Plaintiff participated in submitting a claim for the entire amount to the Guardianship for Bertina Hards.  It is clear that Plaintiff knew and approved of a submittal of its fee bill to the Guardianship. Plaintiff cannot be permitted to allow such a submittal if, as Plaintiff now contends, some of the services were performed for individuals and not the Guardianship.

> {¶12} Plaintiff also cannot succeed on its claims that these Defendants orally obligated themselves to pay the attorney fees if those fees were not approved by the Lake County Probate Court.  If the attorney fees were an obligation of the Guardianship as submitted to the Probate Court, any guarantee or promise to pay those fees by the individual Defendants had to be a written agreement.

{¶13} The court additionally denied Shore's motion for summary judgment on the Adams' counterclaim for an accounting, but granted Shore's motion for summary judgment on the abuse-of-process claim.

{¶14} On September 23, 2005, a hearing was held on the Adams' motion for sanctions, pursuant to R.C. 2323.51, Ohio's frivolous conduct statute.  From the bench, the trial court ruled that it would only consider evidence of fees relating to work Adams' counsel engaged in while defending the underlying cause of action brought by Shore

---

2. It appears the Adams' counterclaims, previously pending in the Cuyahoga County case, were dismissed by the Cuyahoga County Court of Common Pleas on September 28, 2000.

5

and those fees relating to work preparing for the frivolous-conduct hearing. The court determined it would hear no evidence relating to fees generated by the accounting counterclaim or the defense of Shore's claims *after* Shore moved to voluntarily dismiss the action and the Adams opposed the dismissal. Testimony was taken only on the Adams' attorney fees and whether these fees were reasonable and necessary.

{¶15} After the hearing in 2005, there was little activity in the case until March 4, 2015, when the parties reconvened for a final hearing. On August 20, 2015, the trial court issued a judgment finding that the complaint filed by Shore, seeking to hold the Adams individually liable on the outstanding fee bill, was frivolous. The court noted that the parties appeared to have originally entered into an oral agreement to Shore hourly for legal services relating to estate matters, but then converted that arrangement into a contingency fee agreement for the purpose of obtaining the Lake County Judge's approval of the fees. The court observed:

{¶16} Although Shore entered into the contingency fee agreement regarding the Dean Witter Reynolds lawsuit, Shore has sued Defendants for $12,861.90 claiming that those fees were due for services rendered prior to the contingent fee agreement or were for services other than the Dean Witter Reynolds matter. Despite those claims, Shore has failed to adequately explain why all of the $12,861 was presented to the Lake County Probate Judge as fees owed by the Estate of Bertina Hards.

{¶17} The court determined that once Shore submitted the fees to the probate court to secure payment from the estate, it could not pursue the underlying action against the Adams. In effect, the court ruled Shore "lost any viable claim to the $12,861.90 that had previously been submitted to the same Court as expenses of the Estate of Bertina Hards." Accordingly, the court ruled Shore's cause of action, pursuing the $12,861.90 in fees against the Adams, must be frivolous because it "was not warranted under existing law, cannot be supported by good faith argument for an

6

extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law." The court further determined the Adams were entitled to $10,000 as reasonable compensation for the expenses incurred by Shore's frivolous conduct. Finally, the court ruled:

> **{¶18}** Previously, this Court determined that Michael Shore Co., LPA, should be required to account for the fees paid to it. Upon review of the record in this matter, it is the Court's conclusion that such an accounting shall not be required. The $5,000 paid by the Guardian for the Estate of Bertina Hards was authorized by the Lake County Probate Court and any accounting for those funds should have occurred at that Court. As for the $10,573.69, any accounting would be to the trustee of inter vivos trust, not to any of the beneficiaries of that trust.

**{¶19}** On appeal the Adams assign three errors for our review and Shore assigns three errors on cross-appeal for our review. For ease of discussion, we shall address Shore's third assignment of error on cross appeal first. It provides:

**{¶20}** "The trial court erred in granting summary judgment on the original Shore complaint for attorney fees originally filed in the Shaker Heights Municipal Court."

**{¶21}** Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated; (2) "the moving party is entitled to judgment as a matter of law;" and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." A trial court's decision to grant summary judgment is analyzed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the

7

trial court's decision." (Citation omitted.) *Peer v. Sayers*, 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶27.

{¶22} Shore asserts that even though the parties did not enter a written contract, the Adams orally obligated themselves, individually, to pay any outstanding fees from its representation of the guardianship estate. In support, it maintains that, unless a written contract expressly provides otherwise, "'executors and administrators are generally personally liable for services of attorneys employed by them * * *.'" *In re: The Estate of Simons*, 11th Dist. Trumubll No. 2004-T-0066, 2005-Ohio-2362, ¶28, quoting *Wilcox & Schlosser Co., L.P.A. v. Rich*, 10th Dist. Franklin No. 81AP-269, 1981 WL 3687, *3 (Dec. 22, 1981). Further, even though the statute of frauds may generally bar recovery where a plaintiff seeks to hold a defendant responsible for the debt of another, Shore maintains the Adams secured its services for their own benefit, not merely for the benefit of the estate. Under such circumstances, where the "leading object" is to subserve the defendant's interests, "the oral promise would constitute an original obligation of the defendant, and would not be subject to the Statute of Frauds." *Drake, Phillips, Kuenzli & Clark v. Skundor*, 27 Ohio App.3d 337 (3d Dist.1986), citing *Wolf v. Friedman*, 20 Ohio St.2d 49 (1969), paragraph one of the syllabus.

{¶23} In this case, there was evidence that, on March 18, 1997, Shore, via Attorney White, sent Jacqueline Adams a letter relating to his representation on behalf of the guardianship. The letter provided, in relevant part:

{¶24} Pursuant to the Probate Court's request, I am forwarding this letter to you so that you can in turn present it to the Court. As we have discussed, you have indicated a desire to retain me to attempt to recover for this Guardianship losses you have estimated to be substantial caused by transactions that you believe to be improper and/or fraudulent involving a number of individuals and firms that dealt with your mother, Mrs. Hards. In turn, I have requested a

8

retainer in the amount of $5,000 to proceed. As we have discussed, my hourly rate in this matter will be $125 per hour.

{¶25} The foregoing letter related to the initiation of the Dean Witter litigation. A contingency fee agreement was entered by the parties in March 1998. Consequently, the evidence indicates that, aside from the retainer, the parties had an ostensible oral agreement for Shore to represent the interests of the Hards' guardianship estate when the Dean Witter litigation commenced in June 1997.

{¶26} In *Simons*, *supra*, this Court observed executors and administrators are personally liable for the services of the attorneys employed by them. *Id.* at ¶28. In so noting, this court quoted the Third District's opinion in *Schnieder* and cited the Supreme Court of Ohio's opinion in *Judd v. City Trust & Savings Bank*, 133 Ohio St. 81, 91 (1937) ("Strictly speaking, 'executors and administrators are personally liable for the services of attorneys employed by them.'" *Id.*, quoting Adams & Hosford, Ohio Probate Practice and Procedure, 2d Ed., 655, subdivision 15.) See also *Thomas v. Moore,* 52 Ohio St. 200 (1894), paragraph two of syllabus. In this case, however, the alleged oral agreement to enlist Shore for its legal services occurred *not* when Jacqueline Adams was administrator of her mother's estate, but when she was guardian of the estate. With this in mind, R.C. 2111.151(B) provides:

{¶27} A guardian of the estate, a guardian of the person and estate, a guardian of the person, * * * is not personally liable for any debt of the ward * * * unless one or more of the following applies:

{¶28} (1) The guardian * * * agrees to be personally responsible for the debt.

{¶29} (2) The debt was incurred for the support of the ward or the physically infirm, competent adult, and the guardian* * *.

{¶30} (3) The negligence of the guardian * * * gave rise to or resulted in the debt.

9

{¶31} (4) An act of the guardian * * * that was beyond the guardian's * * * authority gave rise to or resulted in the debt.

{¶32} The context of the March 18, 1997 letter and the ensuing Dean Witter litigation indicate Jacqueline Adams was interested in filing that lawsuit to recoup funds allegedly mismanaged by the company. Because there is no written contract, we do not know the scope of the parties' agreement; nevertheless, the letter and theme of the litigation demonstrate Jacqueline Adams wished to bring the suit and hire Shore on her mother's behalf. Although R.C. 2111.151 sets forth various circumstances in which a guardian may be personally liable for the ward's debt, there is simply no competent evidence, other than Shore's unsubstantiated allegation, that Ms. Adams orally agreed to assume personal responsibility for any outstanding fees. Shore *contends* Ms. Adams made an oral promise obligating her personally to pay fees not covered by the estate; it failed, however, to attach an affidavit, made on personal knowledge, that she, in fact, made the affirmative representation. Without some competent evidence to support Shore's assertion that Ms. Adams agreed to obligate herself personally to the ward's outstanding debt, her general immunity from liability for such debt is not lifted. Given the circumstances of this case, Ms. Adams, as the then-guardian of her mother, cannot be held responsible for the fees at issue. We therefore hold Shore failed to create a material fact for litigation on its claim that an oral contract was breached.

{¶33} Furthermore, because Shore failed to provide competent evidence at the summary judgment stage to establish an oral contract, we need not address whether, in entering into the alleged agreement, Ms. Adams' "leading object" was to subserve her pecuniary interests over that of the estate. To be sure, had Shore submitted some Civ.R. 56(E) evidence to support its claim of an oral contract, there would be issues of material fact to resolve regarding whether the "leading object" rule removed the

10

agreement from the purview of R.C. 1335.05, Ohio's statute of frauds. Under the circumstances, however, we need not reach this issue.

{¶34} The trial court held that the Adams were entitled to summary judgment because (1) Shore's submission of the $12,861.90 attorney fees to the guardianship estate ethically precluded it from obtaining relief against the Adams' individually; (2) the statute of frauds required the alleged oral agreement to be in writing; and (3) that because the fees were submitted to the guardianship estate and denied on several occasions, that denial is binding on all parties and therefore the claim is res judicata.

{¶35} With respect to res judicata, Shore moved the guardianship estate for payment because it was enlisted to do the work for the ostensible benefit of the estate. The estate's rejection and the affirmance of that rejection on appeal renders the issue of the former estate's liability res judicata. Because Shore has sought to hold the Adams' individually liable for the fees, based upon Jacqueline Adams' alleged oral assumption of personal liability, the probate and appellate courts' affirmance of the former estate's rejection does not bear upon the instant claim. We know of no procedural or substantive legal rule preventing a firm from seeking reimbursement of fees from a guardian individually simply because the guardianship estate has denied those fees. Neither the trial court, in its entry, nor appellees, in their brief, have offered authority for this proposition. Moreover, if pleaded properly, the "leading object" rule could have operated to remove the alleged agreement from the statute of frauds. We therefore decline to endorse the trial court's rationale in granting the Adams' summary judgment. Because, however, we conclude Shore failed to adduce sufficient evidence to create a genuine issue of material fact on the issue of whether Ms. Adams made an oral promise obligating herself to the debt, we affirm the trial court's judgment.

11

**{¶36}** Shore's third assignment of error on cross-appeal is without merit.

**{¶37}** We shall next address Shore's second assignment of error on cross-appeal, relating to the trial court's determination that Shore, in filing the underlying complaint, involved frivolous conduct under R.C. 2323.51. It alleges:

**{¶38}** "The trial court erred in finding Michael A. Shore Co., LPA actions constituted frivolous conduct."

**{¶39}** The trial court found Shore's conduct to be frivolous under R.C. 2323.51(A)(2)(a)(ii) as not warranted under existing law, that it cannot be supported by a good-faith argument for an extension, modification, or reversal of existing law, or that it cannot be supported by a good-faith argument for the establishment of new law; it also found the conduct frivolous under R.C. 2323.51(A)(2)(a)(iii) to the extent it consisted of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

**{¶40}** As discussed above, even though summary judgment was properly entered in this case, this does not imply there were no legal and factual bases for the allegation that the Adams may be personally liable for the fees at issue. If Shore had provided some evidence, via, e.g., an affidavit made on personal knowledge, that Ms. Adams orally bound herself personally to pay any outstanding fees (subsequent to enlisting Shore to pursue the Dean Witter litigation and pay at an hourly rate), there would be a genuine issue of material fact regarding whether her general immunity from the ward's debt was lifted per R.C. 2111.151(B). Had Shore cleared this obstacle, a trier of fact could conclude her "leading object" in pursuing the Dean Witter litigation was to advance her own pecuniary interests (and not merely that of the guardianship estate).

12

With these premises in mind, the breach of oral contract could have proven successful. As such, the complaint was supported by an established legal theory and was premised upon factual allegation that could have had some evidentiary support. Accordingly, Shore's conduct in filing the action cannot be deemed frivolous.

{¶41} Shore's second assignment of error on cross appeal has merit.

{¶42} With respect to the amount of sanctions awarded by the trial court, the Adams assert for their first assignment of error:

{¶43} "The trial court erred by allowing only $10,000.00 as sanctions for the frivolous conduct of Michael A. Shore and his firm, and Daniel S. White. (T.D. 134, p.5, paragraph 4 and p.6, paragraph 1) Ohio Revised Code Section 2323.51(B)(1)."

{¶44} Similarly, Shore's first assignment of error on cross appeal alleges:

{¶45} "The trial court erred in awarding damages in the amount of $10,000.00 in favor of defendants and against Michael Shore Co., LPA and Daniel White, jointly and severally."

{¶46} Because we have held that, as a matter of law, Shore's conduct in filing the underlying complaint, was not frivolous, there was no basis for sanctions. These assignments of error are overruled as moot.

{¶47} The Adams' second and third assignments of error are related and will be addressed together. They provide:

{¶48} "[2.] The trial court erred by holding that Jacqueline Adams, individually, as the sole successor-in-interest to the Hards Trust, did not have standing to obtain an accounting for the expense payments made to the Michael A. Shore firm (T.D. 134, p.6, paragraph 2)(T.d. 14, p.1, paragraph 3)(T.D. 15 p.1, paragraph 3 and p.2-3, paragraph III)(T.D. 16).

13

{¶49} "[3.] The trial court erred by not granting the Defendants' counterclaim for an accounting which had been previously granted in its prior Decision of June 16, 2004 in Case Number 04M000045. Such an accounting was needed to determine the actual amount and to obtain return of the unused two retainers that attorney Shore had received from the Bertina Hards Guardianship, and from the Bertina Hards Trust."

{¶50} Although the Adams' second assignment of error presents an issue of law, it is unclear, from the existing record, how they are prejudiced by the trial court's judgment denying them an accounting from Shore. The Adams' arguments are premised upon their assertion that the retainers "were not for attorney fees, but rather for discovery expenses such as depositions and bank research fees." Even assuming the Adams have standing to obtain an accounting, it is unclear that the Lake County Probate Court limited the use of the $5,000.00 retainer to costs and expenses. The payment was approved for legal services. Similarly, it is unclear that the payment of over $10,000.00 from the trust was limited to costs and expenses. Although the record indicates there was a hearing on the accounting issue, this court does not have a transcript of the hearing. Without some evidence that the funds that were approved were limited to a specific purpose, we fail to discern how the Adams would be entitled to any reimbursement of those funds. There is nothing to suggest the approved funds were used for anything else than legal services. Accordingly, this court has no basis to reverse the trial court's judgment concluding the Adams are not entitled to an accounting of the funds paid from the estate and the trust pursuant to the approved requests.

{¶51} The Adams' second and third assignments of error lack merit.

{¶52} For the reasons discussed in this opinion, the trial court did not err in granting the Adams' motion for summary judgment. Given the facts and legal theories advanced in this case, however, we hold the trial court erred in concluding Shore's conduct was frivolous and, as a result, also erred in sanctioning Shore. Those orders are reversed. Finally, the trial court's decision denying the Adams' request for an accounting of previously-approved funds for legal services is affirmed. Thus, the judgments of the Geauga County Court of Common Pleas is affirmed in part, reversed in part, and remanded.

THOMAS R. WRIGHT, J.,

COLLEEN MARY O'TOOLE, J.,

concur.